Larry DEERING, Petitioner–Appellant,

v.

Harold M. BROWN, Attorney General of the State of Alaska, Respondent–Appellee.

No. 86–3548.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 1, 1987.

Decided Feb. 4, 1988.

Richard G. Haggart, Birch, Horton, Bittner, Pestinger & Anderson, Anchorage, Alaska, for petitioner-appellant.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, Alaska, Harold M. Brown, Atty. Gen., Juneau, Alaska, for respondent-appellee.

Before POOLE, FERGUSON and CANBY, Circuit Judges.

POOLE, Circuit Judge:

### INTRODUCTION

The fifth amendment "guarantees ... the right of a person to remain silent unless he chooses to speak in the unfettered expression of his own will, and to suffer no penalty ... for such silence." *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–94, 12 L.Ed.2d 653 (1964). In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court ruled that the fifth amendment protects an accused only from being *compelled* to testify against himself or otherwise provide the state with evidence of a *testimonial* or *communicative* nature. The Court then concluded that, because the results of a blood alcohol "breathalyzer" test are physical rather than testimonial or communicative evidence, a state has the power to administer such a test against a defendant's will without infringing on his fifth amendment privilege.

More recently in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) the Court addressed a question reserved in *Schmerber,* that is, whether, in order to prove a charge of driving under the influence of alcohol, the admission into evidence of a defendant's *refusal* to submit to a breathalyzer test

violated his fifth amendment right against self-incrimination. The court reasoned that because it gave him the choice of submitting to the test or refusing, the state did not directly *compel* the defendant to refuse the test. *Id.* at 562–64, 103 S.Ct. at 922–23.[1] The choice between submitting to a blood test which legitimately could have been compelled under *Schmerber,* or, alternatively, having the refusal used as evidence in court, was not so coercive as to amount to compulsion in violation of the fifth amendment. *Id.* at 563–64, 103 S.Ct. at 922–23. The fact that refusal was accompanied by the civil penalty of license revocation did not affect the Court's conclusion. *Id.* at 563, 103 S.Ct. at 922.

The case before us goes one step further. We are presented with the novel question of the application of the *Neville* rationale to the unusual situation in which a state has made refusal to submit to a breathalyzer test a separate criminal offense, itself punishable by a minimum sentence of three days in jail. Whether such use of a refusal to take a test for intoxication violates the fifth amendment's guarantee against self incrimination is a question of first impression in this circuit, and apparently has been addressed by no other federal court.[2]

### FACTS

On November 22, 1982, appellant Larry Deering was arrested by an Alaska state trooper for operating a vehicle while intoxicated. Deering was advised of his *Miranda* rights both before and after being

1. Although the Court noted that refusal to submit to a blood alcohol test appears to be a physical act rather than a testimonial communication, *Id.* at 560–62, 103 S.Ct. at 921–22, it explicitly declined to rest its decision on this distinction.

2. Nor is there much state court precedent. Although most states impose civil penalties for refusal to take a breathalyzer test, only two states—Alaska and New York—have criminalized it.

The Alaska Court of Appeals has held that the Alaska criminal refusal statute does not violate the fifth amendment. *Coleman v. State,* 658 P.2d 1364, 1365–66 (Alaska Ct.App.1983) (refusal to take breathalyzer test is "entitled to no greater protection than would be given to any

other unlawful conduct engaged in by [the suspect] with intent to hamper investigation of the offense for which he was arrested").

The New York Court of Appeals has not addressed the constitutionality of the state's criminal refusal statute, and the lower New York courts have reached conflicting results. *Compare People v. Hamza,* 109 Misc.2d 1055, 441 N.Y.S.2d 579, 581 (Gates Town Ct.1981) (imposition of criminal rather than civil penalties for refusal makes the statute unconstitutional), *and People v. Brockum,* 88 A.D.2d 697, 451 N.Y.S.2d 326, 327 (N.Y.App.Div.1982) (statute does not violate the fifth amendment because the taking of a breath test does not involve testimonial compulsion).

taken to the police station. At the station, Deering was asked by the arresting officer if he would submit to a breathalyzer test. He did not respond. The officer told Deering that refusal to take the test constituted a criminal misdemeanor, and further warned Deering that if he did not respond, his silence would be deemed a refusal. Deering remained silent.

Deering was subsequently charged with driving while intoxicated (DWI), Alaska Stat. § 28.35.030(a), and with refusal to take a breathalyzer test, Alaska Stat. § 28.35.032(f). Both violations are criminal "class A" misdemeanors in Alaska, carrying maximum penalties of one year in prison and a fine of $1000. Both also require minimum sentences upon conviction of three days in prison.[3]

At his jury trial, Deering's silent refusal was used as evidence supporting both charges. The trial court denied Deering's motions to suppress the refusal as violative of his fifth amendment rights, and Deering was found guilty of both offenses. After the Court of Appeals affirmed Deering's conviction and the Alaska Supreme Court refused to hear his appeal,[4] Deering filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the district of Alaska, alleging, as he had below, that the state proceedings violated his fifth amendment rights against self incrimination. The district court denied the petition and issued a certificate of probable cause pursuant to Fed.R.App.P. 22(b). Deering timely appealed.

Where, as here, the facts are undisputed, the denial of a habeas corpus petition is reviewed *de novo*. *Burnett v. Municipality of Anchorage*, 806 F.2d 1447, 1449 (9th Cir.1986).

**I.  Did Admission of Deering's Refusal Violate the Fifth Amendment?**

*A.  Was Deering's refusal a "testimonial" communication?*

As we mentioned above, in order to merit the protections of the fifth amendment privilege against self incrimination, a defendant's evidence must be both "compelled" by the state and of a "testimonial" or "communicative" nature. *See Schmerber*, 384 U.S. at 764, 86 S.Ct. at 1832. We turn first to the question whether Deering's refusal constituted "testimonial" evidence within the context of the crimes charged.

■ First, this circuit has clearly held that the refusal to take a blood-alcohol test, in the context of a charge of driving while intoxicated, is nontestimonial conduct indicating a consciousness of guilt, *Newhouse v. Misterly*, 415 F.2d 514, 518 (9th Cir. 1969), *cert. denied*, 397 U.S. 966, 90 S.Ct. 1001, 25 L.Ed.2d 258 (1970). Thus it is clear that the state's use of Deering's refusal in proving the DWI charge was nontestimonial and does not implicate the fifth amendment.

■ Deering argues, however, that in the context of the separate criminal charge of *breathalyzer refusal*, his refusal to take the test was somehow transformed into a "testimonial" statement. He argues that, because the breathalyzer test is the subject of a distinct criminal charge in Alaska, the effects of refusal in these circumstances are qualitatively different from those in cases where the charge is DWI, in which an arrestee's answer to police questions could at most provide inferential evidence as to the related charge. Because refusal is criminalized, Deering suggests, the po-

---

**3.** Alaska's "implied consent" statute, Alaska Stat. § 28.35.031, provides that a person who operates a motor vehicle in the state is considered to have given consent to a breathalyzer to determine the alcoholic content of his blood. *See* Alaska Stat. § 28.35.031(a) We recently rejected a fourth amendment challenge to the implied consent statute—and its attendant sanctions—in *Burnett v. Municipality of Anchorage*, 806 F.2d 1447 (9th Cir.1986). That case does not control

here, where appellant challenges the statute on fifth amendment grounds.

**4.** The Alaska Supreme Court initially granted Deering's petition for a writ of certiorari, and the appeal was briefed and argued. After oral argument, however, the Court determined that the petition was improvidently granted. Thus Deering has exhausted his remedies in state court. *See* 28 U.S.C. § 2254(b).

lice were demanding either a promise to take the test or, in his failure to perform, an "outright confession of guilt."

We find this contention, although appealing at first blush, ultimately unpersuasive. That the refusal is itself an element of this crime, rather than merely *evidence* of an element of the crime (as it is in the case of the DWI charge), does not transform the nature of the refusal itself. Alaska's refusal statute is closely analogous to a criminal contempt penalty for violating a court order to produce nontestimonial evidence. Just as a defendant facing a court order to produce nontestimonial evidence has no constitutional right to refuse the order, *In re Braughton*, 520 F.2d 765, 767 (9th Cir. 1975) (request for handwriting exemplar), so Deering had no right to refuse the police request for a breathalyzer test. *Burnett v. Municipality of Anchorage*, 806 F.2d 1447, 1450 (9th Cir.1986). And just as the imposition of *criminal* contempt penalties does not transform the refusal to obey a court order regarding nontestimonial evidence into a testimonial communication with respect to the contempt charge, *cf. United States v. Hammond*, 419 F.2d 166, 168 (4th Cir.1969) (court order to appear in lineup wearing goatee, backed by criminal contempt charge, does not violate fifth amendment), *cert. denied*, 397 U.S. 1068, 90 S.Ct. 1508, 25 L.Ed.2d 690 (1970), neither does the imposition by the State of Alaska of a criminal penalty for refusal to provide the state with the physical evidence of a breathalyzer test—beyond the civil penalty of license revocation clearly condoned in *Neville*—qualitatively transform the refusal into testimony.

We acknowledge that some refusals are by nature more "testimonial" than others. *Cf. Neville*, 459 U.S. at 562, 103 S.Ct. at 921–22 (implying that a nonverbal refusal can be considered less "testimonial" than a verbal refusal combined with a statement of the reason for the refusal). As in the case of a failure to obey a court order in order to prove a criminal contempt charge,

evidence of Deering's refusal was not used for the testimonial or communicative content conveyed by his act of refusal (*e.g.,* "I'm refusing because I'm too drunk to pass"). Rather, it was used to show that he had not performed the physical act of actually taking the test when requested. Because the act of refusal was not used for testimonial purposes at trial but rather simply to convey that, indeed, Deering had not taken the test when requested, there was no fifth amendment violation. *See Estelle v. Smith*, 451 U.S. 454, 463, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359 (1981); *United States v. Dionisio*, 410 U.S. 1, 7, 93 S.Ct. 764, 768, 35 L.Ed.2d 67 (1973).

### B. Was Deering's refusal "compelled"?

■ Even were we to find Deering's refusal to be in some respects "testimonial" with respect to the charge of refusal, we nonetheless conclude that it was not "compelled" for purposes of fifth amendment analysis. In *Neville* the Court relied on two related factors in finding that the state did not "compel" the defendant to incriminate himself when it gave him a choice between submitting to a blood-alcohol test or having the refusal used against him in court.[5] First, the Court noted that the state could legitimately compel a suspect to take a blood-alcohol test against the suspect's will. *Neville*, 459 U.S. at 563, 103 S.Ct. at 922; *See also Schmerber* 384 U.S. 757, at 760–65, 86 S.Ct. at 1830–33. The Court then concluded that the offer of taking a blood-alcohol test "becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice." *Neville*, 459 U.S. at 563, 103 S.Ct. at 922 (emphasis in original).

The choice faced by Deering was identical to the choice treated in *Neville*, with the notable exception that Deering faced criminal charges for his refusal. Deering suggests that, where refusal is criminalized,

---

**5.** Many states punish the refusal to take a breathalyzer by suspending the defendant's driving privileges. This practice has been upheld if the state provides adequate process during the revocation or suspension process. *Neville,* 459 U.S. 553, 103 S.Ct. 916; *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979).

the choice offered by the state is illusory, because he faced either submitting to the breathalyzer test, thereby incriminating himself under Alaska's DWI statute, or of refusing to take the test, and incriminating himself under Alaska's criminal refusal statute.

It is true that, as the Court stated in *Neville*, the mere presence of choice does not always settle the compulsion issue. *Id.* at 562–63, 103 S.Ct. at 922. The legitimacy of a choice largely depends on the coerciveness of the proffered alternatives; certain "cruel choices," and choices made in highly coercive circumstances, are proscribed by the fifth amendment even though the state, strictly speaking, does not compel an incriminating statement. *See New Jersey v. Portash,* 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979) (proscribing choice between testifying or facing contempt charges); *Schmerber,* 384 U.S. at 765 n. 9, 86 S.Ct. at 1833 n. 9 (fifth amendment may bar use of testimony obtained when the proffered alternative was to submit to a test so painful that a person almost inevitably would prefer confession); *Miranda v. Arizona,* 384 U.S. 436, 458, 86 S.Ct. 1602, 1619, 16 L.Ed.2d 694 (1966) (unless coercion inherent in custodial surroundings is dispelled, no statement is truly a product of free choice); *Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596–97, 12 L.Ed.2d 678 (1964) (proscribing choice between self-accusation, perjury for false testimony, and contempt for declining to testify).

Although we acknowledge that the choice in this case appears more coercive than that in *Neville,* we nonetheless conclude that the Supreme Court's analysis in that case is controlling, and applies equally to Deering's choice despite the criminal penalties attendant upon it. Where, as here, the state could have taken Deerings' blood by force,[6] it does not "compel" a defendant to testify against himself when it allows him the choice of either producing the evidence or facing criminal charges— and even a mandatory prison sentence of three days—for withholding it. Such a choice is no more impermissibly coercive than any order to produce physical evidence which is backed with the sanction of criminal contempt. As the Court noted in *Neville,* "the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices." 459 U.S. at 564, 103 S.Ct. at 922–23.

Equally important, we note that the Court's analysis in *Neville* placed great weight on the fact that the state did not directly compel a *refusal.* Rather, the Court noted, the state wants suspects to *take* the blood-alcohol test. *Id.* at 563–64, 103 S.Ct. at 922–23. *See also People v. Ellis,* 65 Cal.2d 529, 537, 55 Cal.Rptr. 385, 389, 421 P.2d 393, 397 (Cal.1966) (Traynor, C.J.) (refusal to take voice identification test in rape case: "[a] guilty party may prefer not to find himself in a situation where consciousness of guilt may be inferred from his conduct, but it can scarcely be contended that the police, who seek evidence from the test itself, will tend to coerce parties into refusing to take tests in order to produce this evidence") (footnote omitted).

We find this observation equally persuasive here. In fact, a criminal penalty for refusal arguably compels a refusal less than the civil penalty present in *Neville* did. Although the imposition of a criminal penalty for refusal may create an inherently more coercive situation than imposition of a civil penalty for the same behavior, the compulsion it increases is the compulsion to *submit* to the breathalyzer test, not the compulsion to *refuse,* and *refusal* is the conduct made criminal in the statute. Because increasing the penalty attendant upon refusal only reduces the likelihood of refusal, *cf. Neville,* 459 U.S. at 560, 103 S.Ct. at 920–21 (allowing use of refusal at trial discourages choice of refusal), Deering's refusal was even less "compelled" than the refusal in *Neville.*

---

**6.** *See,* footnote 3, above.

In short, Deering's refusal in this case was neither testimonial nor compelled. The Court held in *Neville* that "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." As our discussion shows, that conclusion is not altered by the imposition of criminal penalties upon the choice of refusal. The analysis proffered in *Neville* is controlling here, and Deering's fifth amendment challenge must therefore fail.

## II. Was Deering's Refusal Admitted in Violation of *Miranda?*

■ Because custodial interrogation is inherently coercive, the prosecution may not use statements made during the course of a "custodial interrogation" unless it demonstrates that the defendant was advised of the right to remain silent and the right to counsel, and that the defendant voluntarily waived those rights. *Miranda v. Arizona*, 384 U.S. 436 at 444, 86 S.Ct. 1602 at 1612, 16 L.Ed.2d 694 (1966). *Neville* indicates that the *Miranda* analysis *supplements* the "basic" fifth amendment analysis discussed above. *See Neville*, 459 U.S. at 564 n. 15, 103 S.Ct. at 923 n. 15.

Deering argues that his refusal was used in court to prove intent to refuse to take the breathalyzer test, and that therefore it should have been excluded as evidence obtained by the police in violation of *Miranda*. The short answer to this question is simply to note that the supplementary protections of *Miranda* do not apply to nontestimonial evidence, which we have determined Deering's refusal to be. *See Schmerber*, 384 U.S. at 761–65, 86 S.Ct. at 1831–32; *see also Newhouse v. Misterly*, 415 F.2d 514, 518 (9th Cir.1969) (discussing *Miranda* and *Schmerber* ).

## III. Did Admission of Deering's Silent Refusal Violate Due Process?

■ The due process clause prohibits the "use against a criminal defendant of silence maintained after receipt of government assurances" such as *Miranda* warnings. *Anderson v. Charles*, 447 U.S. 404,

407–08, 100 S.Ct. 2180, 2181–82, 65 L.Ed.2d 222 (1980); *see also Doyle v. Ohio*, 426 U.S. 610, 617–19, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91 (1976); *cf. Miranda*, 384 U.S. at 468 n. 37, 86 S.Ct. at 1624–25 n. 37. Deering suggests that admitting evidence of his silent refusal to submit to the breathalyzer test was equivalent to admitting evidence of silence occurring in the course of a post-arrest interrogation; we construe his arguments as a due process claim.

Again, in *Neville* the Supreme Court has held that introduction at a trial for DWI of a defendant's refusal to take a breathalyzer test did not violate due process. *Neville*, 459 U.S. at 564–66, 103 S.Ct. at 923–24. The Court reasoned that evidence of such a refusal is admissible because a defendant has no legitimate expectation that the refusal will not be used in court. *Id.* at 565–66, 103 S.Ct. at 923–24. Again, the Court's reasoning is unaltered and equally applicable when the refusal is introduced at a trial for refusal to take a breathalyzer test. It is fanciful to presume that there arises some new expectation by a defendant that his refusal will not be used in court because it may be used to prove different conduct under a separate statute.

Furthermore, the fact that Deering refused by silence rather than by speech is of no legal consequence. *See Neville*, 459 U.S. at 562, 103 S.Ct. at 921–22. It is abundantly clear that Deering's silence was a refusal in this case; he did not, after all is said and done, take a breathalyzer test. His failure to do so is not rendered any more legitimate by cloaking it in the due process protections traditionally afforded a defendant's silence.

## CONCLUSION

For all of the above reasons, the district court's denial of Deering's habeas corpus petition is AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

The crucial issue in this case is whether a state may use an individual's silence following advisement of the constitutional right to remain silent as evidence to establish

criminal conduct. The majority avoids this by posing the issue as whether evidence of Deering's "silent refusal" may constitutionally be used to support a criminal charge of refusing to submit to a breathalyzer test required by statute.

I dissent because the majority opinion 1) penalizes an individual for exercising the constitutional right to remain silent, and 2) allows the testimonial use of "nontestimonial" evidence, in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1]

## I.

The police officers twice informed Deering of his Miranda rights, and each time followed with a request that he submit to a breathalyzer test. On each occasion he remained silent and this silence was used against him at trial.

The majority is correct in recognizing that Alaska is not using Deering's silence as evidence of his having violated the statute prohibiting drunk driving. However, the state *is* using Deering's silence to prove violation of a different criminal statute. This clearly contravenes the promise implicit in the standard *Miranda* warning that "you have the right to remain silent" because "anything you say can and will be used against you." *See generally Miranda*, 384 U.S. at 469, 86 S.Ct. at 1625. The warning's guarantee that your silence —when kept in exercise of your constitutional right to remain silent—will not be used against you to establish criminal conduct. *See id.* at 468 n. 37, 86 S.Ct. at 1624–25 n. 37. The prosecution is not permitted to use at trial the fact that an accused stood mute or claimed the right to

exercise his/her Fifth Amendment privilege. *Id.; see also Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) (in criminal cases the defendant's silence may not be treated as "substantive evidence of guilt"); *cf. Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–94, 12 L.Ed.2d 653 (1964) ("The [Constitution] secures ... the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will and to suffer no penalty ... for such silence.").

In *Newhouse v. Misterly*, 415 F.2d 514 (9th Cir.1969), *cert. denied*, 397 U.S. 966, 90 S.Ct. 1001, 25 L.Ed.2d 258 (1970), this court stated that

> where an underlying [state statutory] right to refuse ... a blood test is present, it would be improper to draw adverse inferences from failure of the accused to respond to a request for a blood test because the accused would thereby be penalized for exercising his rights to refuse the test.

*Id.* at 518 (interpreting *Schmerber v. California*, 384 U.S. 757, 765 n. 9, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966)). In this case we address a situation where the impropriety of drawing the adverse conclusion of guilt is much more compelling than the situation referred to in *Newhouse* which contemplated a statutory right of refusal; we are confronted with guilt being inferred from the exercise of a constitutional right to remain silent.

To support its decision, the majority relies heavily upon *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).[2] This reliance is misplaced because

---

1. I am not challenging Alaska's right to criminalize an individual's refusal to take the blood alcohol test. Civil penalties for such refusals have specifically been found to be constitutional. *See, e.g., South Dakota v. Neville*, 459 U.S. 553, 560, 103 S.Ct. 916, 920–21, 74 L.Ed.2d 748 (1983) (revocation of driver's license "for refusing to take a blood-alcohol test is unquestionably legitimate, assuming appropriate procedural protections.") Nor am I saying that Deering has a right to refuse to take the breathalyzer test. This court has specifically determined that there is not such a right under the Alaska statutes. *Burnett v. Municipality of Anchorage*, 806

F.2d 1447, 1450 (9th Cir.1986). Further, I am not arguing that the refusal itself becomes testimonial when criminalized.

These issues need not be addressed since resolution of the threshold question—whether silence in the context of a post-Miranda warning can be used as evidence establishing the requisite refusal—disposes of the case.

2. In *Neville* the Supreme Court examined whether the admission into evidence at trial of the defendant's refusal to take a statutorily required blood test violated his Fifth Amendment right against self-incrimination where another of the

*Neville* is inapposite to the case at bar in two ways. First, *Neville* involved the use of an affirmative statement to prove a criminally sanctioned refusal. Second, the affirmative statement at issue was *assumed* to constitute a refusal to perform a statutorily required act. In contrast, this case presents the issue of *whether* an individual's silence, following a *Miranda* warning, can be used to establish, let alone itself constitute, a criminally sanctioned refusal. I would hold that it cannot constitutionally be so used.

## II.

The majority also holds that Deering's "refusal" to perform a breathalyzer test is not transformed into testimonial evidence [3] simply because it is criminalized. *But see Schmerber*, 384 U.S. at 765 n. 9, 86 S.Ct. at 1833 n. 9. ("This conclusion [that the results of a breathalyzer test are not testimonial] would not necessarily govern had the state tried to show that the accused had incriminated himself when told that he would have to be tested.") Here the majority has avoided the crux of the issue. Our inquiry should not focus on the testimonial quality of a refusal, but on whether the exercise of a constitutional right to remain silent becomes testimony when used as evidence of a criminally sanctioned refusal. I would hold that the use of silence to establish a refusal is inherently testimonial, *cf. Schmerber*, 384 U.S. at 761 n. 5, 86 S.Ct. at 1830 n. 5. ("A nod or head-shake is as much a 'testimonial' or 'communicative' act ... as are spoken words."), when the refusal sought to be established is itself criminal conduct. This is because the silence is used—against the individual's will—as an admission of guilt. *Cf. Estelle v. Smith*, 451 U.S. 454, 463, 101 S.Ct. 1866, 1873, 68

L.Ed.2d 359 (1981) ("Any effort by the State to compel respondent to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.").

"The Fifth and the Fourteenth Amendments provide that no person 'shall be compelled in any criminal case to be a witness against himself.'" *New Jersey v. Portash*, 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979). Moreover, "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law...." *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978) (emphasis in original). Thus in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court declared that "[a]ny effort" by a state to compel an individual "to testify against his will at [a] sentencing hearing clearly would contravene the Fifth Amendment." *Id.* at 463, 101 S.Ct. at 1873 (footnote omitted). Allowing Alaska to use the exercise of an individual's constitutional right to remain silent as proof of guilt means that a State may force an individual to involuntarily testify against him/herself and thus is equivalent to authorizing the conduct proscribed by the Court in *Estelle*.

The majority, while "acknowledg[ing] that the choice in this case appears more coercive than that in *Neville*," nonetheless relies on the case to support its holding that Deering's "refusal" was not compelled. There is, however, a paramount difference between the "difficult choices" referred to in *Neville*, 459 U.S. at 564, 103 S.Ct. at 923 ("the criminal process often requires suspects and defendants to make difficult choices"), and the catch–22 presented by the Alaska statutes in light of

state's statutes authorized revocation of an individual's driver's license if s/he refused to submit to the test. Holding that use of the refusal did not violate the defendant's Fifth Amendment right, the Court specifically noted Neville's response after twice being asked to take the blood alcohol test. Neville had responded each time by stating: "I'm too drunk, I won't pass the test." 459 U.S. at 555–56, 103 S.Ct. at 918.

**3.** The Supreme Court has said that "[i]f it wishes to compel persons to submit to ... attempts to

discover evidence, the State may have to forgo the advantage of any *testimonial* products of administering the test—products which would fall within the privilege." *Schmerber*, 384 U.S. at 765 n. 9, 86 S.Ct. at 1833 n. 9 (emphasis in original). The majority properly notes that under *Schmerber*, evidence that is compelled and "testimonial" or "communicative" in nature falls clearly within the scope of protected exercise of the Fifth Amendment privilege.

the majority's opinion. The situation faced by Deering—to submit to a breathalyzer test which could establish violation of a drunk driving statute or have the exercise of his constitutional right to remain silent be used to prove violation of another statute—goes beyond the bounds of *Neville*[4] and is more closely analogous to the "choices" proscribed by the Supreme Court in other relevant precedent. *See, e.g., New Jersey v. Portash,* 440 U.S. at 459, 99 S.Ct. at 1297 ("constitutional privilege against compulsory self-incrimination" violated where witness was told he could "talk or face the government's coercive sanctions, notably, a conviction for contempt"); *Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52, 77, 84 S.Ct. 1594, 1608, 12 L.Ed.2d 678 (1964) (one jurisdiction may not compel "testimony which could be used to convict him of a crime in another jurisdiction"); *cf. Schmerber,* 384 U.S. at 765 n. 9, 86 S.Ct. at 1833 n. 9 (choice between confession and painful, dangerous or severe operation would likely be unconstitutional coercive).

### III.

The majority opinion effectively criminalizes the exercise of a constitutional right to remain silent by equating Deering's silence with the criminal refusal itself. Constitutional privileges are nullified when individuals are penalized for exercising them. I would not allow a defendant to be "whipsawed into incriminating himself", *Knapp v. Schweitzer,* 357 U.S. 371, 385, 78 S.Ct. 1302, 1310, 2 L.Ed.2d 1393 (1958) (Black, J., dissenting), since such is the type of government coercion the Fifth Amendment was intended to prevent. I would reverse the district court and grant the petition for a writ of habeas corpus.

---

**4.** In *Miranda* the Supreme Court said that "[u]nless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." 384 U.S. at 458, 86 S.Ct. at 1619. By equating silence with refusal the ma-

jority goes beyond the standard set forth in *Miranda,* for what could be more inherently coercive than the choice between violating one law, and providing evidence which will conclusively establish whether another has been violated?