JOURNAL ENTRY AND OPINION
{¶ 1} Heather Henniger ("Henniger") appeals the trial court's decision denying her motion to suppress. Henniger claims the trial court erred in failing to suppress her statements regarding her refusal to submit to a chemical (breath) test after she was charged with operating a motor vehicle under the influence. Henniger argues she should have been advised of her Miranda
warnings prior to being asked to submit to the chemical test, because her refusal to submit to the test was subsequently used to satisfy an element of the offense charged. For the reasons outlined below, we reject Henniger's claim and affirm the decision of the trial court.
 {¶ 2} The parties stipulated to the following facts. On December 31, 2004, at approximately 12:15 a.m., Henniger was stopped by a Middleburg Heights police officer for two traffic violations. Henniger was observed failing to stay within a marked lane of traffic, as described under R.C. 4511.33(A)(1), and failing to stop at a stop sign, as outlined under R.C.4511.43(A). She was cited for both. In addition, Henniger was placed under arrest for operating a motor vehicle while under the influence of alcohol.
 {¶ 3} Henniger was transported to the police station, where she was asked at 12:54 a.m. to submit to a breath test and she refused. The officer then noted "refusal" on both the citation and the BMV 2255 form. Henniger had a prior OVI conviction in June 2003 from the Brooklyn Heights Mayor's Court.[1]
Between 12:54 a.m. and 1:19 a.m., Henniger was afforded the opportunity to consult with an attorney, but she was unable to contact an attorney by telephone.[2] Henniger was read herMiranda warnings at 1:19 a.m.
 {¶ 4} Henniger was actually charged twice with the same OVI offense under R.C. 4511.19(A)(2). The first count was referenced as "DUI with a prior," and the second count was referenced as a "DUI (refusal)." In addition, Henniger was charged with driving in marked lanes, in violation of R.C. 4511.33; and failure to yield at intersection with traffic control device, in violation of R.C. 4511.43(A). R.C. 4511.19(A)(2) reads as follows:
"4511.19(A)(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, division (A)(1) or (B) of this section, or a municipal OVI offense shall do both of the following:
"(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
"(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section4511.191 [4511.19.1] of the Revised Code, and being advised by the officer in accordance with section 4511.192 [4511.19.2] of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests."
(Emphasis added).
 {¶ 5} Prior to trial, Henniger moved the trial court to suppress the self-incriminating statements made before she received her Miranda warnings. After reviewing the arguments of counsel, the trial court denied Henniger's motion to suppress. Henniger then pled no contest to all four charges; however, prior to sentencing the trial court dismissed the duplicate OVI count. The sentences were stayed pending appeal.
 {¶ 6} On appeal Henniger raises one assignment of error, which reads as follows:
 {¶ 7} "The trial court erred in failing to grant defendant's motion to suppress self-incriminating statements made in response to police interrogation while in custody and prior to the reading of her Miranda rights."
 {¶ 8} Appellate review of a motion to suppress presents mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fanning (1982),1 Ohio St.3d 19. With respect to the trial court's conclusions of law, however, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. Statev. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372; see, also,State v. Nickelberry, Cuyahoga App. No. 83964, 2004-Ohio-5976.
 {¶ 9} At the outset, we note that Henniger does not challenge R.C. 4511.19(A)(2) on the apparent "criminalization" of the refusal. Rather, Henniger challenges the case on theFifth Amendment question of whether Miranda warnings are required before requesting a chemical test from a defendant with a prior OVI conviction when a refusal to submit to a chemical test by that defendant will be used as an element of the offense and will enhance the minimum mandatory sentence.
 {¶ 10} There is no dispute that at the time Henniger was asked to submit to the chemical test, she was under arrest. The parties stipulated to this fact, and the portion of the BMV "2255" form read to Henniger, captioned "Consequences of Test and Refusal, (R.C. 4511.192)," expressly stated she was under arrest.
 {¶ 11} The BMV 2255 "Consequence" form reads as follows:
"You now are under arrest for (specifically state the offense under state law or a substantially equivalent municipal ordinance for which the person was arrested — operating a vehicle under the influence of alcohol, a drug, or a combination of them; operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance; operating a vehicle after underage alcohol consumption; or having physical control of a vehicle while under the influence).
"If you refuse to take any chemical test required by law, your Ohio driving privileges will be suspended immediately, and you will have to pay a fee to have the privileges reinstated. If you have a prior of OVI, OVUAC, or operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance conviction under state or municipal law within the preceding twenty years, you now are under arrest for state OVI, and, if you refuse to take a chemical test, you will face increased penalties if you subsequently are convicted of the state OVI.
"If you take any chemical test required by law and are found to be at or over the prohibited amount of alcohol, a controlled substance, or a metabolite of a controlled substance in your whole blood, blood serum or plasma, breath, or urine as set by law, your Ohio driving privileges will be suspended immediately, and you will have to pay a fee to have the privileges reinstated.
"If you take a chemical test, you may have an independent chemical test taken at your own expense."
R.C. 4511.192(B).
 {¶ 12} After being advised with the above language, Henniger refused to submit to the breath test.
 {¶ 13} The United States Supreme Court has held that the admission of evidence at trial of a defendant's refusal to take a chemical test does not violate the defendant's Fifth Amendment privilege against self-incrimination or the Fourteenth Amendment right to due process. South Dakota v. Neville (1983),459 U.S. 553, 564-566. Following Neville, the Supreme Court of Ohio has held that the trier of fact may consider a defendant's refusal to submit to a chemical test as evidence in deciding whether the defendant was under the influence of alcohol. Maumee v. Anistik
(1994), 69 Ohio St.3d 339, syllabus; see, also, State v.Spurlock (Dec. 15, 1995), Portage App. No. 95-P-0067.
 {¶ 14} The question presented here is whether, because the refusal is an element of R.C. 4511.19(A)(2) rather than a circumstantial evidentiary consideration of impairment, the nature of the police inquiry to submit to a test changes. We hold that it does not.
 {¶ 15} In order to merit the protections of theFifth Amendment privilege against self-incrimination, the evidence must be both "compelled" by the state and of a "testimonial" or "communicative" nature. Deering v. Brown (C.A., 9),839 F.2d 539, citing Schmerber v. California (1966), 384 U.S. 757, 764. In Deering, the Ninth Circuit concluded that a refusal was not testimonial because it "was not used for the testimonial or communicative content * * *. Rather, it was used to show that he had not performed the physical act of actually taking the test when requested." Id. at 542. A number of Ohio courts have held that prior to administering a chemical test, Miranda warnings are not required. "Miranda warnings need not precede administration of a breathalyzer test because such a test is not testimonial in nature." State v. Hall, Greene App. No. 04CA86,2005-Ohio-4526, citing State v. King (June 18, 1999), Clark App. No. 98CA97. "The Fifth Amendment privilege against self-incrimination does not apply to a test like a breathalyzer that is designed to develop physical, and not testimonial, evidence." State v. Perez, Hamilton App. Nos. C-040363, C-040364, C-040365, 2005-Ohio-1326. Questions normally attendant to arrest and custody do not constitute interrogation forMiranda purposes. See U.S. v. Mitchell (4th Cir. 2003), 58 Fed. Appx. 14, citing South Dakota v. Neville (1983),459 U.S. 553, 564 n. 15; Rhode Island v. Innis (1980), 446 U.S. 291,301.
 {¶ 16} Further, the use of the refusal as evidence of a defendant being under the influence is controlled by an authorized jury instruction, which reads as follows:
"Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his breath to determine the amount of alcohol in his system, for the purpose of suggesting that the defendant believed he was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol."
See City of Maumee v. Anistik, 69 Ohio St.3d 339,1994-Ohio-157; State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528.
 {¶ 17} Even if the refusal is in some respects "testimonial," we find that it was not "compelled" for purposes ofFifth Amendment analysis. See Deering, 839 F.2d at 542; see, also,State v. Morale (2002), 811 A.2d 185. The Fifth Amendment is limited to "prohibiting the use of `physical or moral compulsion' exerted on the person asserting the privilege." Fisher v.United States (1976), 425 U.S. 391, 397. "This coercion requirement comes directly from the constitutional language directing that no person `shall be compelled in any criminal case to be a witness against himself.' U.S. Const., Amdt. 5." See Neville,459 U.S. at 562.
 {¶ 18} In Neville the Court relied on two related factors in finding that the state did not "compel" the defendant to incriminate himself when he was given a choice between submitting to a blood-alcohol test or having the refusal used against him in court. First, the Court noted that the state could legitimately compel a suspect to take a blood-alcohol test against the suspect's will. Neville, 459 U.S. at 563; Schmerber,384 U.S. at 760-765. Then the Court concluded that the offer of taking a blood-alcohol test "becomes no less legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice." Neville, 459 U.S. at 563
(emphasis in original).
 {¶ 19} Ohio, like South Dakota in Neville, has adopted an implied consent statute, which is outlined in R.C. 4511.191. The consent statute spells out a bargain between drivers and the state. In exchange for the use of the roads within the state of Ohio, drivers consent to have their breath tested if a police officer has reason to believe the driver is intoxicated. Because an OVI suspect is already deemed to have consented to the breath test, "no impermissible coercion is involved when the suspect refuses to submit to take the test." Neville, 459 U.S. at 562.
 {¶ 20} Here, as in Neville, there was no compulsion. The state did not directly compel Henniger to refuse the test; rather the state gave Henniger a choice. We recognize, of course, that the choice to submit or refuse to take a breath test will not be an easy or pleasant one for a suspect to make, but "the criminal process often requires suspects and defendants to make difficult choices." Neville, 459 U.S. at 759.
 {¶ 21} Since Ohio has long accepted the principle that a defendant's refusal may be used in considering whether the defendant is under the influence, we see no distinction in the use of that same refusal as an element to enhance a minimum term of imprisonment. If it is admissible for one, it is equally admissible for the other. To require Miranda warnings before using a defendant's refusal would be akin to requiring Miranda
warnings for targets during a conspiracy investigation. "The right to refuse the blood alcohol test, unlike the right to remain silent in a police interrogation, was a matter of legislative grace, not constitutional imperative; and (2) the warnings given to Neville by the police officers, unlikeMiranda warnings, did not contain `implicit assurances as to the relative consequences of his choice' whether to take the test." South Dakota v. Neville, 459 U.S. at 565. Neville thus reaffirms that due process is denied only when the government induces a defendant's post-arrest silence with the assurance that such silence will not be used against the defendant. UnitedStates v. Quinn (4th Cir. 2004), 359 F.3d 666, 678.
 {¶ 22} The Ninth Circuit in Deering, addressing a criminal refusal statute, found that criminalizing the refusal does not transform its admission into evidence into a violation of theFifth Amendment. Deering, 839 F.2d at 542; see, also, State v.Morale (2002), 811 A.2d 185 (Supreme Court of Vermont holding that a defendant's statement refusing to submit to a breath test does not fall within the category of compelled testimony protected by either the general Fifth Amendment privilege against self-incrimination or by the rights announced in Miranda; and that the state is entitled to use evidence of a refusal in the prosecution of a defendant for that refusal).
 {¶ 23} Here, the officer made no assurances to Henniger that were designed to elicit an incriminating response. Thus, there was no constitutional violation by failing to provide Miranda
warnings prior to requesting Henniger to submit to the chemical test.
Henniger's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Kilbane, J., concur.
[1] The stipulation did not indicate whether the prior mayor's court conviction was counseled, uncounseled, or, if uncounseled, whether a proper waiver of counsel existed. Further, there was no indication in the stipulation concerning whether jail time had been part of the actual or suspended sentence. Since these issues were not raised on appeal, they are not before this court.
[2] Although no Sixth Amendment right to counsel attaches, R.C.2935.20 has been interpreted to require police to allow consultation with counsel prior to administering the breathalyzer test. See In re: V.S., Summit App. No. 22632, 2005-Ohio-6324, citing State v. Downing, Greene App. No. 2001-CA-78, 2002-Ohio-1302.