976 So.2d 15 (2008)
STATE of Florida, Appellant,
v.
Anthony BUSCIGLIO, Appellee.
No. 2D06-2415.
District Court of Appeal of Florida, Second District.
January 23, 2008.
Rehearing Denied March 17, 2008.
*17 Bill McCollum, Attorney General, Tallahassee, and Marilyn Muir Beccue and Chandra Waite Dasrat, Assistant Attorneys General, Tampa, for Appellant.
Eilam Isaak, Tampa, for Appellee.
VILLANTI, Judge.
The State appeals a trial court order granting suppression of the arresting officer's request and Anthony Busciglio's refusal to take a breath test. The breath test request was made after Busciglio's lawful arrest for felony driving under the influence (DUI). Because his driving privileges had been previously suspended for a prior refusal to submit to a breath test, Busciglio's current refusal constituted a first-degree misdemeanor pursuant to section 316.1939, Florida Statutes (2005). We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.140(c)(1)(B), which allows the State to appeal orders granting suppression of confessions or admissions. Because the trial court predicated its ruling on the denial of Busciglio's right to counsel at a time when he was not legally entitled to counsel, we reverse.
The underlying facts in this appeal are not in dispute. On the evening of July 5, 2005, Officer McKendree stopped a vehicle driven by Busciglio after he cut through a parking lot presumably in order to avoid stopping for a red light and failed to use his turn signal when making a turn onto another road. Busciglio does not contest the validity of the traffic stop in this appeal.[1] During the stop, Officer McKendree observed Busciglio having significant trouble handling his wallet, he smelled alcohol, and he heard glass clanging in the vehicle when he first approached it. These observations led Officer McKendree to call for a DUI officer. Officer Portman arrived on the scene and noticed that Busciglio's eyes were bloodshot, that he smelled of alcohol, and that he swayed from side to side while standing. Officer Portman conducted field sobriety exercises, and Busciglio showed a number of signs of impairment. At that point, Officer Portman read Busciglio his Miranda[2] rights and arrested him for driving under the influence of alcoholic beverages.
After being transported to the police station, it is uncontested that Officer Portman *18 read Busciglio the "Florida Implied Consent Law" from a form provided at Central Breath Testing; this warning is required by section 316.1939(1).[3] Thus Busciglio was specifically informed of the penalty provision for a second or subsequent refusal: "It is a first degree misdemeanor to refuse to submit [to testing]." He was further advised, "[Y]our right to have a lawyer present before making any statements or during any questioning has nothing to do with taking this chemical test for the purpose of determining the content of your breath." After responding that he understood everything read to him, Busciglio was asked, "Are you willing to take a breath test, yes or no?" Busciglio replied, "No." It is also undisputed that at no time before or after the implied consent warning did Busciglio invoke any Miranda rights, including his "right" to counsel.
At the hearing on the motion to suppress, it was stipulated that Busciglio's driver's license was previously suspended for one year for "refusal to submit to breath/urine/blood test" on February 15, 2001. After considering the testimony presented and argument of counsel, the trial court granted suppression of any evidence that Busciglio was asked to submit to the breath test or that he refused to submit to the breath test on the sole basis that as a matter of law, "[Busciglio] was entitled to counsel prior to the breath test as a result of the criminalization of his refusal."[4] It is from this order that the State appeals.
Appellate review of a ruling on a motion to suppress is a mixed question of law and fact. See State v. Tanner, 915 So.2d 762, 764 (Fla. 2d DCA 2005). The trial court's findings of fact are presumed correct and will be reversed only if they are not supported by competent, substantial evidence. Id. However, "the standard of review for the trial court's application of the law to its factual findings is de novo." Cillo v. State, 849 So.2d 353, 354 (Fla. 2d DCA 2003). Our reversal is not based upon any erroneous factual findings made by the trial courtits factual findings are not in disputebut upon the trial court's misapplication of controlling legal principles to those facts.
The parties on appeal agree there is no question that prior to the enactment of section 316.1939 on July 1, 2002, a person did not have a right to counsel prior to submitting to a breath test. See, e.g., State v. Burns, 661 So.2d 842 (Fla. 5th DCA 1995). However, Busciglio argues that any precedent predating the criminalization of a refusal to take a breath test is no longer good law. The flaw with this assertion is that the enactment of the subject statute does not change the analysis of when the right to counsel under Miranda is applicable. The fact that a second or subsequent refusal can now be a first-degree *19 misdemeanor under certain circumstances, as opposed to merely subjecting the defendant to license suspension, is not the relevant inquiry. Rather, the relevant inquiry is whether there is a right to counsel at all prior to deciding to refuse to take the test.
Initially, we note that Busciglio admirably bases his right-to-counsel argument as arising only from article I, section 9, of the Florida Constitution. He contends the Florida Constitution creates a greater right to counsel than that provided by the United States Constitution. See State v. Hoch, 500 So.2d 597, 599 (Fla. 3d DCA 1986) (holding (1) that administering a breath test is not a critical stage of the proceedings to which a Sixth Amendment right to counsel attaches and (2) that the results of a breath test are physical evidencenot testimonialand thus, no Fifth Amendment right to counsel attaches).
Article I, section 9, provides that "[n]o person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself." (Emphasis added.) Specifically, Busciglio contends that he had a right to counsel under article I, section 9, prior to refusing to take the breath test because "his refusal exposed him to criminal charges" and, thus, he had a right not to be compelled to incriminate himself. We disagree.
The protections of the self-incrimination clause of article I, section 9, apply only to "custodial interrogations." See Traylor v. State, 596 So.2d 957, 966 (Fla.1992). "Custody" occurs when "a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest." Id. at 966 n. 16 (citing Berkemer v. McCarty, 468 U.S. 420, 440-42, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). An "interrogation" occurs when "a person is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response." Id. at 966 n. 17 (citing Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).
The parties both concede that Busciglio was in "custody" at the time he was asked to submit to the breath test because he had already been arrested for DUI and transported to the police station. However, the parties dispute whether Busciglio was subjected to an "interrogation." Officer Portman, a state agent, clearly asked an express question of Busciglio when he asked Busciglio whether he was "willing to take a breath test." Therefore, the only remaining issue is whether a reasonable person would conclude that Officer Portman's question was "designed to lead to an incriminating response." See id.
Busciglio argues that the officer's question was designed to elicit either a "yes" or "no" response. He further concludes that a "no" response is "clearly incriminatory" because the State intends to use such a response "to show consciousness of guilt" and "as an element of the crime of refusing [to take the breath test] pursuant to [section] 316.1939." We will now address why this logic fails.
First, "a main focus of Florida confession law has always been on guarding against one thingcoercion." Traylor, 596 So.2d at 964. Asking a defendant to comply with conduct he has no "right" to refuse does not invoke any degree of coercion associated with impermissible interrogation. Section 316.1932(1)(a)(1)(a) provides: "Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical *20 test. . . ." Thus a driver is statutorily preordained to have already consented to take a breath test, and coercion cannot be a factor when an officer prompts an arrestee to perform the test he already agreed to take.
Second, while the officer's prompt may be in the form of a question, it does not jeopardize Busciglio's constitutional right to counsel because no interrogation of constitutional proportion is involved. "`[I]nterrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.'" Timmons v. State, 961 So.2d 378, 380 (Fla. 4th DCA 2007) (quoting Innis, 446 U.S. at 302, 100 S.Ct. 1682). In other words, even if coercion were a factor to consider, the question of whether Busciglio was willing to take a breath test "would not make [him] feel compelled to incriminate himself." See id. (explaining that questions which are not designed to lead to an incriminating response would not make a person feel compelled to incriminate himself or herself). There is no contention in this case that any officer knew Busciglio was a DUI/refusal recidivist or that any officer knew a "no" response from him would have been an incriminating response.[5]
From the officer's point of view, giving the implied consent warning is simply part of the performance of his duty and not part of any "interrogation."[6] From Busciglio's point of view, which is the more relevant inquiry, he may have felt compelled to choose the lesser of two evils: i.e., he could refuse and potentially violate section 316.1939 or he could take the test and potentially provide incriminating evidence to be used against him in a DUI trial. Of course, if unimpaired, the test result could provide exonerating evidence. However, there is a telling maxim that applies in this instance: no injury can be complained of by a consenting party. As discussed earlier, once Busciglio exercised his privilege to drive, he consented to taking a breath test. See § 316.1932. Therefore, Busciglio had already consented, and Officer Portman's question was merely an opportunity for Busciglio to withdraw that consentwith possible consequencesas opposed to an effort by Officer Portman designed to lead Busciglio to incriminate himself by refusing.
The choice to comply with the law confronts our citizenry on a daily basis. It is not a complex choice that generally evokes a right to counsel. The fact that criminal penalties apply when one chooses to break the law, such as the relatively recent criminalization of a refusal to take a breath test, should be an expected consequence. Regardless, any guesswork as to possible criminal consequences a refusal might entail was removed when the statutorily required implied consent proviso was read to Busciglio.
*21 Moreover, although the parties do not couch their arguments on appeal in terms of the Fifth Amendment, we find it helpful to briefly address it in order to shed further light on the logic inherent in our holding. The Fifth Amendment applies only when a defendant is compelled to make an incriminating "testimonial" communication. See Fisher v. United States, 425 U.S. 391, 408, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Although the Supreme Court declined to define "testimonial" in Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Court has since provided some guidance on the subject. See Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006). Specifically, statements are "testimonial" when "the primary purpose of [an] interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 2274 (emphasis added). Under this logic, Busciglio's refusal to submit to a breath test could not qualify as a testimonial response because the primary purpose of any solicitation was not to establish or prove a past event. For example, Officer Portman's question did not pertain to whether Busciglio had a past DUI conviction or whether he had refused to take a breath test in the past. Rather, Officer Portman's yes/no question concerned merely a current event: i.e., whether Busciglio would take the test at that moment in time. At the point in time when Officer Portman asked the question, the crime concerning Busciglio's refusal had not yet occurred. Under Davis, future-looking statements not involving a conspiracy are generally not considered testimonial and thus the right to counsel should not attach.
Lastly, because the issue on appeal involves a question of first impression in Florida, we will now examine select cases from other jurisdictions for additional guidance. The Ninth Circuit Court of Appeals addressed a similar issue in Deering v. Brown, 839 F.2d 539 (9th Cir.1988). In Deering, the court concluded that a refusal to submit to a breath test is neither testimonial nor compelled, even when the refusal constitutes a crime. 839 F.2d at 544. The court noted that it has been widely held that a refusal used as evidence of a crime is not "testimonial." Id. at 542. The court explained that the refusal is not transformed into a testimonial response merely because it is used as a direct element of a crime. Id. Further, a refusal cannot be considered to be "compelled" because the criminalization increases "the compulsion to submit to the breathalyzer test, not the compulsion to refuse, and refusal is the conduct made criminal in the statute." Id. at 543.
Similarly, the Supreme Court of Vermont held that a refusal to submit to a breath test is not compelled testimony protected by the Fifth Amendment or Miranda, even though criminal penalties apply to the refusal. See State v. Morale, 174 Vt. 213, 811 A.2d 185, 186 (2002). In Morale, the Vermont Legislature had enacted an implied consent law very similar to Florida's section 316.1932. See id. at 188. Also similar to Florida, the court noted that the legislature chose to penalize refusal to take a breath test as opposed to compelling submission to the test. See id. In holding that a defendant's refusal does not fall under the protections of Miranda, the court explained that Miranda concerns are not relevant because an officer has no incentive to coerce the defendant into refusing; indeed, the officer hopes the defendant will submit, not refuse. Id. at 189. The court further explained that in asking whether a defendant will submit to the test, the officers are inquiring about a future act, not a past crime. Id.
Finally, the Virginia Court of Appeals also held that refusing to provide a breath *22 sample when a criminal penalty will apply to such a refusal is a nontestimonial act. See Rowley v. Commonwealth, 48 Va.App. 181, 629 S.E.2d 188, 190 (2006). We agree with the courts' logic detailed in Deering, Morale, and Rowley. Further, we have examined and rejected Busciglio's countervailing case law from other jurisdictions.
In conclusion, whether analyzed under article I, section 9, of the Florida Constitution or the Fifth Amendment of the United States Constitution, under the circumstances of Officer Portman's perfunctory performance of his duty which involved, if not required, a postarrest statutory explanation of Busciglio's obligation to take a breath test, neither the yes/no question nor its answer constituted a testimonial interrogation implicating Busciglio's right to counsel. Accordingly, it was legal error to suppress these statements, and the order granting their suppression must be reversed.
Reversed and remanded for further proceedings.
DAVIS, J., and BENNETT, ROBERT B., JR., Associate Judge, Concur.
NOTES
[1] Probable cause for the traffic stop was challenged below but is not contested on appeal. In fact, Officer McKendree testified that although he could have issued two traffic infraction tickets to Busciglio for failure to use a turn signal and for avoiding a traffic device by going through a parking lot and could also have impounded Busciglio's vehicle, he exercised officer "discretion" not to do so.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] To be guilty of violating section 316.1932, the defendant must have been "informed that, if he or she refused to submit to such test, his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months." § 316.1939(1)(c). The defendant must also have been "informed that a refusal to submit to a lawful test of his or her breath, . . . if his or her driving privilege has been previously suspended for a prior refusal to submit to a lawful test . . . [constitutes] a misdemeanor." § 316.1939(1)(d).
[4] Busciglio also contended below that the Miranda warnings given at the scene were deficient because they did not properly advise him of his right to have counsel present "during" questioning. See Powell v. State, 969 So.2d 1060 (Fla. 2d DCA 2007) (holding that "any time" is insufficient to warn accused of right to counsel "during" questioning). The trial court agreed and suppressed other statements in relation to the DUI charge, but that ruling is not the subject of this appeal.
[5] We note that Busciglio could not have committed a misdemeanor under section 316.1939 by the mere act of refusing the test. The other relevant elements of the crime are (1) previous suspension of his driving privilege for a prior refusal, (2) probable cause by the officer that Busciglio was driving under the influence, (3) lawful arrest for DUI, and (4) a properly administered warning that his driving privilege would be suspended and that he would be guilty of a misdemeanor if his driving privilege had been suspended previously for a prior refusal. See § 316.1939(1).
[6] Busciglio also argues that the State does not need the breathalyzer results or evidence of a refusal to take the test in order to prosecute for the crime of driving under the influence because impairment remains an available alternate method of proof. While this may be true, this is a strategy decisionwhich only the State, and not the defense, controls. Thus we reject without further discussion this contention as being irrelevant to the issue on appeal.