OPINION
{¶ 1} Defendant-appellant Aaron Gerhart appeals his conviction and sentence from the Mansfield Municipal Court on one count of domestic violence assault. Plaintiffappellee is the Village of Lexington.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 17, 2003, a complaint was filed alleging that appellant had committed domestic violence assault in violation of Village of Lexington Ordinance Section 537.14, a misdemeanor of the first degree. The complaint specifically alleged that appellant had choked and pushed Danielle Johnson, the mother of his child. At his arraignment on October 2, 2003, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, a bench trial was held on December 4, 2003. Appellant represented himself at trial. At trial, Danielle Johnson testified that she was at Geyer's Supermarket at approximately 9:44 p.m. on September 17, 2003, to pick up $20.00 from appellant. When appellant arrived on the scene, Johnson asked him to come over and talk to her about their daughter. Shortly thereafter, appellant's girlfriend, Jennifer, and Johnson got into an argument. After Johnson got out of her car and punched Jennifer in the face, appellant grabbed Johnson by the shirt, dragged her to the driver's side of her car, opened the car door and tried to push her into the driver's seat. According to Johnson, the two were "struggling" with each other. Transcript at 19. Johnson then got out of the car and appellant grabbed her with both hands around her neck and told her "to get the fuck out of here." Transcript at 20.
 {¶ 4} After Johnson told appellant that she was not leaving until she was "done" with Jennifer, appellant "started squeezing tighter, and he told me that he was fucking going to kill me." Transcript at 20. Shortly thereafter, Johnson blacked out and fell to the ground. When Johnson came to, appellant grabbed her by the shirt and pushed her into her car. Johnson then left and contacted the police.
 {¶ 5} The trial court, on December 4, 2003, found appellant guilty of domestic violence assault. Pursuant to a Judgment Entry filed on February 18, 2004, the trial court sentenced appellant to 180 days in jail, with 120 days suspended, and to 60 days of house arrest. The trial court further sentenced appellant to one year intensive supervision probation, ordered appellant to complete the Dove program and parenting classes and fined appellant $100.00. The trial court also ordered appellant to have no contact with the victim.
 {¶ 6} Appellant now raises the following assignments of error on appeal:
 {¶ 7} "I. The lower court erred in not appointing counsel.
 {¶ 8} "II. The lower court erred in applying an incorrect definition of assault.
 {¶ 9} "III. The record being incomplete, defendant's due process right to an appellate review is compromised, requiring a reversal and remand."
 I {¶ 10} Appellant, in his first assignment of error, argues that the trial court erred in not appointing counsel for appellant.
 {¶ 11} "The constitutionally protected right to the assistance of counsel is absolute." State v. Tymcio (1975) 42 Ohio St.2d 39, 43,325 N.E.2d 556, citing Argersinger v. Hamlin (1972) 407 U.S. 25, 37,92 S.Ct. 2006. In Tymcio, supra, the Ohio Supreme Court recognized that the trial court in a criminal case, whether involving a serious offense or a minor offense, has a duty to inquire fully into the circumstances relating to an accused's claimed inability to obtain counsel and his consequent need for assistance from the trial court in employing counsel or for the assistance of court appointed counsel. "To make the right to the assistance of court appointed counsel a factual reality, the determination of need must turn, not upon whether an accused ought to be able to employ counsel, but whether he is in fact able to do so."Tymcio, supra. at 45. As the Ohio Supreme Court noted in Tymcio, many factors, financial and otherwise, may "impinge upon a defendant's inability to obtain counsel, factors which may differ greatly from case to case." Id. at 44. There is a presumption against the waiver of a constitutional right such as the right to counsel. See Brookhart v.Janis (1966), 384 U.S. 1, 86 S.Ct. 1245.
 {¶ 12} At the trial in this matter, appellant was unrepresented by counsel. The following discussion occurred on the record prior to the commencement of trial:
 {¶ 13} "THE COURT: Lexington versus Aaron Gerhart. You're here unrepresented by counsel. Is that correct?
 {¶ 14} "MR. GERHART: Yes, sir.
 {¶ 15} "THE COURT: Okay. Are you familiar with the charge in the case?
 {¶ 16} "MR. GERHART: Yes, sir.
 {¶ 17} "THE COURT: You received a copy of it?
 {¶ 18} "MR. GERHART: Yes, sir.
 {¶ 19} "THE COURT: Do you understand it carries a potential penalty of up to six months in jail and up to $1,000 fine?
 {¶ 20} "MR. GERHART: Yes, sir.
 {¶ 21} "THE COURT: Do you feel you can adequately represent yourself?
 {¶ 22} "MR. GERHART: Yes, sir.
 {¶ 23} "THE COURT: Are you sure you don't want an attorney?
 {¶ 24} "MR. GERHART: I can't afford one, sir, and you denied my request for a court-appointed attorney.
 {¶ 25} "THE COURT: If I did, that was because your income indicates (inaudible).
 {¶ 26} "MR. GERHART: I don't have money for it, sir.
 {¶ 27} "THE COURT: Have you talked to any attorneys?
 {¶ 28} "MR. GERHART: No, sir.
 {¶ 29} "THE COURT: Why do you feel you don't have enough money?
 {¶ 30} "MR. GERHART: Because I hardly have enough money to pay my bills as it is now." Transcript at 3-4. Appellant, in an October 27, 2003, affidavit of indigency filed with the trial court, indicated that his monthly income was $1,500.00 a month, that he had $300.00 in assets, and that his monthly expenses were $1,048.00. Appellant's affidavit further listed additional income of $1,000.00 from appellant's girlfriend, who lived with appellant and was erroneously listed as a spouse.
 {¶ 31} After appellant, shortly thereafter, indicated to the trial court that he would "like to reserve my right to counsel for future purposes, if needed," the trial court advised appellant that he would not get a second chance if convicted and that "[y]ou don't get to say `I want an attorney' to retry the case." Transcript at 6, 7. The following discussion then took place on the record after appellant stated that he wanted to reserve his right to a trial by jury of his peers:
 {¶ 32} "THE COURT: If you wanted a jury trial, you should have demanded one prior to today.
 {¶ 33} "MR. GERHART: When would have been the correct time to do so?
 {¶ 34} "THE COURT: Anytime up to today.
 {¶ 35} "MR. GERHART: I was going to demand that at the pretrial, but, as you know, the Prosecutor did not show up for the pretrial and —
 {¶ 36} "THE COURT: No, I didn't know that.
 {¶ 37} "MR. GERHART: Well, the Prosecutor did not show up at the pretrial and —
 {¶ 38} "THE COURT: Regardless, once again, if you come in here and try to represent yourself, the pretrial has nothing to do with you filing a jury demand.
 {¶ 39} "MR. GERHART: That's when I was going to file the jury demand.
 {¶ 40} "THE COURT: Well, I can't help you if you didn't understand it.
 {¶ 41} "MR. GERHART: I'm sorry, sir, but the constitution —
 {¶ 42} "THE COURT: I understand it. I appreciate it. I know what the constitution says. And I know that there are many rules and regulations that place term and time deadlines on certain aspects of trials and issues. Are you sure you don't want an attorney?
 {¶ 43} "MR. GERHART: Sir, I cannot afford an attorney.
 {¶ 44} "THE COURT: You haven't talked to any." Transcript at 7-8.
 {¶ 45} Based on the foregoing, we find that the trial court did not sufficiently inquire into appellant's circumstances, financial and otherwise, before denying appellant court-appointed counsel. While, based on appellant's affidavit of indigency, appellant may not have appeared to be, in fact, indigent, there is evidence in the record that at least part of the income claimed by appellant on his affidavit of indigency was not appellant's income, but rather that of appellant's girlfriend. Since the trial court did not inquire on the record as to appellant's circumstances, financial and otherwise, and since there is a presumption against the waiver of constitutional rights such as the right to counsel, we find that appellant's first assignment of error must be sustained.
 {¶ 46} We further find that appellant's first assignment must be sustained because appellant did not validly waive counsel. The Sixth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees that a defendant in a criminal trial has an independent right of self representation, and that he may proceed to defend himself without counsel when he voluntarily, knowingly, and intelligently elects to do so. State v. Gibson (1976), 45 Ohio St.2d 366,377, 345 N.E.2d 399, citing Faretta v. California (1975), 422 U.S. 806,95 S.Ct. 2525. A criminal defendant may waive this right to counsel either expressly or impliedly from the circumstances of the case. State v.Weiss (1993), 92 Ohio App.3d 681, 684, 637 N.E.2d 47. An effective waiver requires the trial court to ". . . make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." Gibson, supra. at paragraph two of the syllabus. In Gibson, supra, the Ohio Supreme Court explained what constitutes a "sufficient inquiry" into a criminal defendant's waiver of his right to counsel: "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Id. at 377. (Citation omitted).
 {¶ 47} While appellant, in the case sub judice, was informed of the nature of the charges and the range of possible punishments, he was not informed of possible defenses and circumstances in mitigation thereof and, as noted by appellant in his brief, was not advised that subsequent convictions for domestic violence could be enhanced by a domestic violence conviction in the case sub judice. Based on the foregoing, we find that appellant did not knowingly, intelligently and voluntarily waive counsel.
 {¶ 48} Accordingly, appellant's first assignment of error is sustained.
 II {¶ 49} Appellant, in his second assignment of error, argues that the trial court erred in applying an "overly broad" and incorrect definition of assault.
 {¶ 50} At the bench trial in the case sub judice, the trial court, in delivering its verdict, defined an assault as "any offense of touching by one person to another." Transcript at 45. Appellant notes that he was charged with domestic violence assault in violation of Village of Lexington Ordinance 537.14, which provides, in relevant part, as follows:
 {¶ 51} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 52} "(B) No person shall recklessly cause serious physical harm to a family or household member.
 {¶ 53} "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."
 {¶ 54} The same language is contained in R.C. Section 2919.25, the domestic violence statute.
 {¶ 55} While appellant argues that the trial court erred in applying a civil definition of assault rather than the above criminal definition, we find such error harmless since there was evidence beyond a reasonable doubt that appellant had caused physical harm to a family or household member. Appellant does not dispute that Danielle Johnson, as the mother of appellant's daughter, was a "family or household member." As is stated above, evidence was adduced at trial that appellant, by choking and pushing Johnson, knowingly caused physical harm to her. In short, the record supports appellant's conviction for domestic violence in violation of Village of Lexington Ordinance 537.14 even though the trial court used an incorrect civil definition of the term "assault."
 {¶ 56} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 57} Appellant, in his third assignment of error, argues that since the record of the trial is incomplete, appellant's "right to an appellate review is compromised, requiring a reversal and remand." Appellant notes that the testimony of a police officer, who was appellee's witness, is missing from the transcript of the taped trial proceedings and that it is impossible to reconstruct such testimony since neither appellant nor the police officer can "recall with sufficient accuracy the missing testimony." According to appellant, it is thus impossible to review any part of the missing testimony.
 {¶ 58} It is well settled that when transcripts contain inaudible portions or omissions, a defendant must attempt to reconstruct the trial record on appeal, through App.R. 9(E) or otherwise, and demonstrate prejudice resulting from the incompleteness. State v. DePew (1988),38 Ohio St.3d 275, 278-279, 528 N.E.2d 542, rev'd in part on other grounds by DePew v. Anderson (6th Cir. 2002), 311 F.3d 742. While as is stated above, appellant has attempted, unsuccessfully, to reconstruct the record, appellant, however, has failed to specify exactly how he was prejudiced by the incomplete transcript.
 {¶ 59} Appellant's third assignment of error is, therefore, overruled.
 {¶ 60} Accordingly, the judgment of the Mansfield Municipal Court is reversed and this matter is remanded to the trial court for further proceedings.
Edwards, J. Hoffman, P.J. concurs separately Boggins, concurs.