OPINION
{¶ 1} Defendant-appellant, Jabra I. Deir, appeals the judgment of the Willoughby Municipal Court, convicting him of one count of Operating a Vehicle While Intoxicated, a violation of Kirtland Hills Village Ordinance 333.01(A)(1). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On October 16, 2003, at approximately 2:10 a.m., Officer Sean Parker, ("Officer Parker") of the Kirtland Hills Police Department, was traveling eastbound along Interstate 90 on routine patrol, when he observed a pick-up truck, operated by Deir, traveling at a low rate of speed relative to the posted speed limit of 65 miles per hour. Following Deir for approximately a mile, he paced the truck's speed at less than 50 miles an hour. During this time, Officer Parker also noted that the truck had no illumination for the rear license plate and, on the basis of this, and the truck's low rate of speed, turned on the patrol car's overhead lights to effectuate a stop. Deir's truck continued on for a distance of approximately 100 yards before finally pulling over to the berm.
 {¶ 3} Officer Parker then approached the truck from the passenger side. The truck had three occupants, Deir, who was driving, Max Omura, who was seated in the middle, and William Hill, who was seated on the passenger side. Officer Parker spoke with Deir, and informed him of the basis of the stop. Deir stated that he knew the light was out and stated that it was due to a recent accident. Officer Parker then asked Deir for his license, which Deir produced. During this initial encounter, Officer Parker noted a strong odor of alcoholic beverage emanating from the vehicle. He also learned at this time that the men were returning home after watching a baseball game at a bar.
 {¶ 4} When he walked around to the driver's side of the truck, Officer Parker again detected the odor of alcoholic beverage. On closer examination, Officer Parker also observed that Deir's eyes were very red and bloodshot, his eyelids were drooping, and his pupils were dilated. In addition, Officer Parker noted that Deir's speech was "very slurred and muttered and mushmouth," with some of his sentences starting out clearly and ending muttered. Based upon these observations, Officer Parker then asked Deir if he had been drinking. Deir denied drinking alcohol.
 {¶ 5} Officer Parker then asked Deir to step out of the truck so he could administer field sobriety tests. Deir complied with this request, but stated he was taking medication for pain. While standing outside the vehicle, Officer Parker again smelled the strong odor of alcohol coming from Deir as he spoke. Officer Parker then attempted to administer the Horizontal Gaze Nystagmus (HGN) test, but was unable to complete the test successfully due to Deir's failure to comply with the instructions. Rather than following Officer Parker's finger with his eyes, Deir would move his head to track its movement. When Officer Parker told him to keep his head still, Deir would stare straight ahead. During the administration of this test, Officer Parker additionally observed that Deir momentarily swayed slightly. Officer Parker then asked Deir if he would be willing to take a portable breath test to confirm that he had not been drinking, but Deir refused, saying that it was against his religion to take a breath test.
 {¶ 6} Officer Parker made a second attempt to administer the HGN test. This time, Deir complained about Officer Parker's flashlight being too bright. Officer Parker then switched to a penlight and tried again. Deir continued to stare straight ahead while the test was performed, rather than following Officer Parker's finger with his eyes. When Officer Parker attempted to explain that he wanted Deir to submit to the HGN test to make certain that he was safe to be driving, Deir became belligerent, yelling and arguing that the officer was a public servant, and as such, should serve him by calling a taxi or calling his wife to come pick him and his friends up, because he didn't feel safe driving home. Officer Parker elected not to administer additional field sobriety tests on the basis of Deir's assertions that he had injuries that affected his ability to perform the one leg stand and walk and turn tests.
 {¶ 7} The conversation continued for approximately fifteen minutes, during which time, Deir would periodically become louder and more verbally aggressive, occasionally using profanity, and asserting that he believed Officer Parker wasn't performing his job by questioning him about drinking, when he should have been finding them another way home so Deir wouldn't have to drive. Officer Parker testified that when Deir yelled, he became even more difficult to understand, and because of Deir's aggressive tone and manner and "mood swings," he eventually called for backup.
 {¶ 8} Shortly thereafter, Patrolman Sloan, ("Sloan") of the Lakeland Community College Police, arrived to assist Officer Parker. While assisting Officer Parker, Sloan also observed Deir's eyes were bloodshot and detected a strong odor of alcoholic beverage coming from his mouth.
 {¶ 9} At this point, Officer Parker decided to place Deir under arrest on suspicion of Operating a Vehicle Under the Influence of Alcohol and/or Drugs, a violation of Codified Ordinances of Kirtland Hills, Section 333.01(A)(1), prohibiting any person from operating a vehicle under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse. Officer Parker attempted to place Deir in the back seat of his patrol car, but Deir repeatedly objected, claiming that he had injuries and medical conditions that prevented him from sitting in the vehicle the way that the officer was requesting and asked that an ambulance be summoned. Since he did not know the nature and extent of Deir's alleged injuries, Officer Parker, in an attempt to make Deir more comfortable, handcuffed Deir so that his arms extended in front of him, instead of behind his back, and placed him so that he was sitting on the edge of the rear seat, facing the open door, with his feet on the ground outside the vehicle.
 {¶ 10} Because of Deir's insistence on being transported to the police station by ambulance, Officer Parker radioed the dispatcher to inquire if the Kirtland Fire Department would send an ambulance to do a courtesy transport. The Fire Department informed the dispatcher that they would only do a transport if someone was injured and needed to go to the hospital. After Officer Parker informed Deir of the reason why the Fire Department would not provide an ambulance, Deir raised his hands to his chest and told Parker that he was having a heart attack, and began breathing heavily and moaning. Deir told Parker that he needed his nitroglycerin pills, which were in his briefcase in the truck. Officer Parker checked the briefcase for the medication, but could not find any. As Officer Parker was returning to his patrol car, he saw Deir laying across the car seat. When Parker approached him, Deir closed his eyes and started moaning.
 {¶ 11} Officer Parker characterized Deir's behavior as follows: "It was like a kid who was pretending to be asleep. He would open his eye slightly. When I would make eye contact with him, he would close his eye real quick, and then start to moan again. This went on for a while. While he was in the back seat of the police car, he would go from complaining, to belligerent, then go back to complaining about the heart attack. I could see that he was sucking on something. He would * * * open his mouth and you could see there was a penny on his tongue. He was kind of flipping the penny over on his tongue, rolling his tongue over a couple of times. A lot of times people will use that as a common myth that will beat a breathalyzer test. I asked him to spit out the penny. He told me he didn't have anything in his mouth, even though you could see the penny on top of his tongue."
 {¶ 12} Officer Parker eventually convinced the Kirtland Fire Department to send a rescue squad to transport Deir to the hospital, so that he could be examined. The rescue squad arrived and transported Deir to Lake East Hospital in Painesville. Officer Parker followed the ambulance to the hospital in his patrol car.
 {¶ 13} Upon his arrival at the hospital, Officer Parker followed the paramedics into the Emergency Room, where the medical staff was attempting to examine Deir. Officer Parker testified that the first thing Deir stated to hospital personnel was that they "weren't allowed to touch him" due to his religious beliefs, and demanded that they give him Nitro for his chest pains. Hospital personnel attempted to explain that they could not administer medication without conducting an examination and performing tests, which would require, among other things, taking a blood sample. Deir became increasingly belligerent and disruptive, refusing to cooperate and demanding medication. Eventually, hospital personnel determined that Deir should be removed from the premises and Officer Parker, a male nurse, and two security guards escorted him from the building. Deir continued his tirade outside of the hospital, to such an extent that the hospital security guard summoned Painesville Police to assist Parker.
 {¶ 14} Because of Deir's difficult behavior and because he did not want to run the risk of aggravating Deir's alleged injuries, Officer Parker decided that rather than attempting to transport Deir to the police station and book him, he would issue the citation in the parking lot and let him go home. Officer Parker called Deir's wife and requested that she pick him up at the hospital and take him home. When Mrs. Deir arrived at the hospital to take him home, Deir entered the vehicle without incident.
 {¶ 15} On October 22, 2003, Deir appeared in court and entered a plea of not guilty to the charge.
 {¶ 16} On December 3, 2003, Deir filed a motion to suppress evidence, citing a lack of probable cause to arrest. Deir stipulated that Officer Parker had authority to effectuate the initial traffic stop.
 {¶ 17} On December 22, 2003, the trial court held a suppression hearing. Based upon the testimony adduced at the suppression hearing, the trial court granted Deir's motion to suppress. The denial of the motion to suppress was appealed by the Village to this court on January 5, 2004. This court reversed the decision of the trial court, finding that under the totality of the circumstances, Officer Parker had probable cause to arrest Deir for Operating a Vehicle Under the Influence. The matter was remanded to the trial court for further proceedings. Kirtland Hills v. Deir, 11th Dist. No. 2004-L-005,2005-Ohio-1563, at ¶¶ 25-26.
 {¶ 18} A bench trial was held on August 24, 2005. Officer Parker testified on behalf of the Village. Deir testified on his own behalf. On the same day, the trial court entered a judgment finding Deir guilty of Operating a Vehicle under the Influence and the license plate charge, but found Deir not guilty of Disorderly Conduct. Deir was sentenced to 90 days in jail, 85 suspended, for a total of five days, to be served concurrently with a sentence for another unrelated offense, and fined $350.
 {¶ 19} On September 23, 2005, Deir appealed the judgment of the trial court, raising the following assignments of error:
 {¶ 20} "[1] The trial court transcripts contain a total of 232 `inaudible' sections, which prevent a true, accurate and proper review by the honorable court of appeals, thus violating the defendant-appellant's constitutional rights as stated in the Ohio Constitution, Article I § 16, U.S. Constitution Amendment 14 [sic].
 {¶ 21} "[2.] Defendant-appellant was denied the effective assistance when counsel failed to subpoena witness, thereby violating his constitutional right to compulsory process as stated in the U.S. Constitution Sixth and Fourteenth Amendments, and the Ohio Constitution, Article I §§ 10, 16 [sic].
 {¶ 22} "[3.] Defendant-appellant was denied due process and his liberty by the Ohio Constitution, Article I, §§ 1, 2, 10, and 16 because his conviction for operating a vehicle while intoxicated is against the manifest weight of the evidence."
 {¶ 23} For discussion purposes, we will address Deir's assignments of error out of the order presented.
 {¶ 24} In his third assignment of error, Deir argues that his conviction was against the manifest weight of the evidence, because Officer Parker's version of events was not reasonable, in that it was inconsistent with the evidence taken from the police video camera and contrary to the suppression hearing testimony of William Hill, who testified that Deir had not been drinking alcoholic beverages that evening. We disagree.
 {¶ 25} Manifest weight of the evidence raises a factual issue and involves "the inclination of the greater amount of credibleevidence." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52
(emphasis sic) (citation omitted). Although the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine, State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus, when reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387. As such, the reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *." Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. The reviewing court may only exercise its discretionary power to reverse a judgment as being against the manifest weight of the evidence only in "those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable [trier of fact] could havefound the defendant guilty." State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175 (emphasis added).
 {¶ 26} The Village ordinance under which Deir was convicted is analogous to R.C. 4511.19(A)(1)(a), which provides: "[n]o person shall operate any vehicle * * *, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 27} Thus, the elements that need be proven are as follows: "(1) the operation of a vehicle; (2) within the state; (3) while under the influence of alcohol." State v. Wargo, 11th Dist. No. 96-T-5528, 1997 Ohio App. LEXIS 4846, at *6.
 {¶ 28} There is no dispute that the evidence for the first two elements was established. Thus, the only remaining issue is whether the state presented competent, credible evidence to demonstrate that Deir was under the influence of alcohol at the time he was operating his vehicle.
 {¶ 29} Under Evid.R. 701, a police officer may, once the proper foundation is made, offer his opinion as a lay witness regarding a defendant's state of intoxication, if 10 the "opinion is rationally based on the perception of the witness and is helpful to * * * the determination of a fact at issue." Id. at *9. This rule allows an officer to properly offer a lay opinion as to whether the defendant was intoxicated. State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, at the syllabus. Moreover, under Evid.R. 702, an officer may testify as an expert, subject to a proper foundation being laid as to his expertise in this area based upon his job experience and any special training he might have received. Wargo, 1997 Ohio App. LEXIS 4846, at *9, n. 2. A review of the record reveals that the prosecution laid the requisite foundation for Officer Parker's testimony.
 {¶ 30} In any prosecution for drunk driving, the prosecution need not prove that actual impaired driving occurred rather it need only show that there was "impaired driving ability." State v. Holland (Dec. 17, 1999), 11th Dist. No. 98-P-0066, 1999 Ohio App. LEXIS 6143, at *14. "To prove impaired driving ability, the state can rely on physiological factors, (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." Id (citations omitted).
 {¶ 31} At trial, Officer Parker indicated that once the lights on his patrol vehicle were activated, Deir continued driving for a distance of approximately 100 yards before attempting to slow his vehicle and pull over to the side of the road. Parker stated that it was his opinion, based upon his experience, that in the absence of other traffic, most drivers react much more quickly to the activation of lights by a patrol car. Parker opined that Deir's reaction time once his lights were activated was atypical of a driver who had not been drinking alcohol.
 {¶ 32} Officer Parker further testified that he detected a very strong odor of alcoholic beverage coming from the vehicle when he stopped it. During this encounter, Officer Parker learned that Deir and his two companions had been at a restaurant watching the World Series. Although Deir's companions admitted to drinking, Deir claimed that he had not been drinking, because he was the designated driver and because he takes muscle relaxants due to a back problem. Officer Parker detected the strong odor of alcohol emanating from Deir's breath when he first spoke to him, which was still present once he was removed from the vehicle. In addition, Officer Parker observed that Deir's eyes were red and bloodshot, his pupils were dilated, his eyelids drooped "halfway down his eyes," and his speech was slurred and mumbled, sometimes starting off speaking clearly before trailing off.
 {¶ 33} Furthermore, there is evidence based upon the testimony of Officer Parker, and the audio portion of the videotape, that during the course of the encounter, Deir became increasingly aggressive and belligerent with Officer Parker, swearing at him and alternately demanding that his wife, a cab, or an ambulance be called to pick him up, since he did not feel safe driving home. In addition, Officer Parker testified that he was not able to perform field sobriety tests, specifically the Horizontal Gaze Nystagmus ("HGN") test because of Deir's initial refusal to submit to the test and subsequent failure to follow instructions. This court has held that the refusal of an accused to take field sobriety tests may properly be considered as evidence at trial. State v. Flynt, 11th Dist. No. 2001-P-0116, 2003-Ohio-1391 at ¶ 16 (citation omitted).
 {¶ 34} Finally, there is undisputed evidence that Deir refused to take both a breath alcohol test and likewise refused to submit to physical examination, including the 12 drawing of blood, upon his arrival at the hospital, ostensibly on the grounds that submitting to these tests was against his religion.[1]
 {¶ 35} R.C. 4511.191(A)(2) provides, in relevant part, that "[a]ny person who operates a vehicle * * * upon a highway * * * shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath or urine to determine the alcohol, drug of abuse, controlled substance, or metabolite * * * content of the person's whole blood, blood serum or plasma, breath, or urine if arrested for a violation of division (A) * * * of section 4511.19 * * * or a substantially equivalent municipal ordinance."
 {¶ 36} It is well-settled that "[o]ne accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication." Westerville v. Cunningham (1968),15 Ohio St.2d 121, at paragraph two of the syllabus, citing Schmerber v.California (1966), 384 U.S. 757. Moreover, the refusal of one accused of intoxication to take a chemical test for intoxication may, for whatever its probative value, be considered as evidence of intoxication by the trier of fact. Id. at paragraph one of the syllabus; Maumee v.Anistik, 69 Ohio St.3d 339, 344, 1994-Ohio-157 ("where a person has been arrested for driving while under the influence of alcohol and is requested by a police officer to submit to a chemical test of his or her breath but he or she refuses to take the test * * * [the trier of fact] * * * may * * * consider this evidence * * * in deciding whether the defendant was under the influence of alcohol") (citation omitted); McNulty v.Curry (1975), 42 Ohio St.2d 341, at paragraph two of the syllabus ("[u]nder R.C. 4511.191, a person accused of driving while under the influence of alcohol has no constitutional right to refuse to submit to the chemical test designated by a law enforcement agency");Middleburg Hts. v. Henniger, 8th Dist. No. 86882, 2006-Ohio-3715, at ¶ 13.
 {¶ 37} When assessing the credibility of witnesses, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it."Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at *8. If the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id. Moreover, in a criminal bench trial, a reviewing court will not reverse a conviction "where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Arnold (Sep. 7, 1999), 12th Dist. No. CA99-02-026, 1999 Ohio App. LEXIS 4159, at *10 (citations omitted).
 {¶ 38} Applying the aforementioned standard, we cannot say that the trial judge clearly lost his way in finding Deir guilty of Operating a Vehicle Under the Influence. Deir's third assignment of error is without merit.
 {¶ 39} In his second assignment of error, Deir argues that his trial counsel rendered ineffective assistance by failing to subpoena two witnesses in his defense.
 {¶ 40} In determining whether trial counsel's assistance was so ineffective as to justify a reversal of a defendant's conviction, a criminal defendant must satisfy the two-part test set forth inStrickland v. Washington (1984), 466 U.S. 668. To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 687.
 {¶ 41} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689 (citation omitted). "Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." Elyria v. Bozman, 9th Dist. No. 01CA007899, 2002-Ohio-2644, at ¶ 21, citing State v. Coulter (1992),75 Ohio App.3d 219, 230; State v. Toney, 9th Dist. No. 04CA0013,2004-Ohio-4877, at ¶ 12 (citation omitted). Moreover, the failure of defense counsel to subpoena witnesses for trial does not violate defense counsel's duty, absent a showing that the defendant has been prejudiced.State v. Coulverson, 10th Dist. No. 01AP-893, 2002-Ohio-1324, 2002 Ohio App. LEXIS 1290, at *20; State v. Gales, 9th Dist. No. 00CA007541, 2000 Ohio App. LEXIS 5428, at *24 ("A counsel's mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of a showing that 15 testimony of any one or more of the witnesses would have assisted the defense.") (citation omitted).
 {¶ 42} In the case sub judice, Deir has failed to demonstrate how he was prejudiced by the failure to subpoena witnesses on his behalf. A review of the record reveals little indication of the witnesses Deir would have called on his behalf and no indication as to the substance of their testimony. Defense counsel made a conscious decision not to subpoena the first potential witness, due to ethical concerns, and did not subpoena the second potential witness because he did not have his address. Deir nevertheless decided against requesting a continuance to subpoena these witnesses and elected to go forward with his trial, thus waiving this issue for the purposes of this appeal. See State v.Skeens (May 6, 1997), 4th Dist. No. 95CA24, 1997 Ohio App. LEXIS 1978, at *8-9. Under the circumstances presented herein, we cannot conclude that counsel's performance was deficient.
 {¶ 43} Deir's second assignment of error is without merit.
 {¶ 44} In his first assignment of error, Deir argues that the presence of 232 `inaudible' sections renders the proceedings incapable of review, thus denying him substantial justice. We disagree.
 {¶ 45} "It is well settled that when transcripts contain inaudible portions or omissions, a defendant must attempt to reconstruct the trial record on appeal, through App.R. 9(E) or otherwise, and demonstrate prejudice resulting from the incompleteness." Lexington v. Gerhart, 5th Dist. No. 2004 CA 0030, 2005-Ohio-723, at ¶ 58, citing State v.DePew (1988), 38 Ohio St.3d 275, 278-9.
 {¶ 46} App.R.9(E) provides: "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth."
 {¶ 47} In the instant matter, Deir filed a "Correction and Modification of the Record" with the appellate court on May 15, 2006, along with two exhibits: The first was an undated letter addressed to the trial court, defense counsel, and the prosecutor. The second was a letter from the prosecutor dated March 16, 2006, which stated that he had no accurate recollection of the inaudible portions and expressed the opinion that no more than a few words were missing from any of the inaudible portions.
 {¶ 48} The burden rests with the appellant to demonstrate how the incomplete portions of a record preclude effective appellate review, and that prejudice will result from the incompleteness of the record.State v. Walton, 2nd Dist. No. 20615, 2006- Ohio-1974, at ¶ 13, citingState v. Williams, 73 Ohio St.3d 153, 160, 1995-Ohio-275. A general assertion that a record contains inaudible portions will not itself suffice. Id. A review of Deir's motion reveals that while he goes to great lengths in recounting each instance in the record where an inaudible response occurs, he fails to demonstrate that effective review is precluded by any of these inaudible portions.
 {¶ 49} Deir's first assignment of error is without merit.
 {¶ 50} For the foregoing reasons, we affirm the judgment of the Willoughby Municipal Court.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] When asked on cross-examination about his religious beliefs, Deir stated that he belongs to the "House of God", an organization including only himself as a member, in which his belief system consists of the practices of "all religions," taking the best of them all and putting them together. According to his beliefs, Deir will consent to hospital treatment when he has "a choice," but not when the treatment is against his express consent.