## State of Vermont v. Ralph N. Morale, Jr., Robert C. Knapp and Gordon G. Parker

[811 A.2d 185]

No. 01-325

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed September 6, 2002

*Matthew H. Huntington*, Windsor County Deputy State's Attorney, White River Junction, for Plaintiff-Appellant.

*Brian R. Marsicovetere, Law Offices of Kevin W. Griffin, P.C.*, White River Junction, for Defendants-Appellees.

**Johnson, J.** In this case, we confront the issue of whether admitting evidence of a DUI suspect's refusal to submit to a breath test violates the suspect's constitutional privilege against self-incrimination in a prosecution for criminal refusal. We decide that a defendant's statement refusing to submit to a breath test does not fall within the category of compelled testimony protected by either the general Fifth Amendment privilege against self-incrimination or by the rights announced in *Miranda v. Arizona*, 384 U.S. 436 (1966). Recognizing that the State is entitled to compel a DUI suspect to submit to a breath test, we hold that the State is equally entitled to use evidence of a refusal in the prosecution of a defendant for that refusal without violating his or her privilege against self-incrimination.

Defendants Robert Knapp, Ralph Morale, and Gordon Parker, whose cases were consolidated in the trial court, were each separately arrested and processed for DUI under similar circumstances. As part of that process, defendants were read their *Miranda* rights, and each declined to waive those rights. The police officer in each case then read defendants the implied consent advisory, derived from 23 V.S.A. § 1202, that precedes the administration of a breath test to determine a suspect's blood alcohol content. The advisory informs defendants that if the result of the test indicates that they are under the influence of alcohol they are subject to criminal charges, but that if defendants refuse to submit to the test their licences may be subject to civil suspension, or, if they have previously been convicted of DUI, they may be charged with criminal refusal. In each case, defendant was asked if he would give a sample of his breath as evidence, and in each case, defendant answered no.

Defendants were charged with criminal refusal in violation of 23 V.S.A. § 1201(b).* In district court, defendants moved to suppress the evidence of the refusals, arguing that their use would violate the constitutional protections against compelled self-incrimination. Noting that defendants gave their refusal after they had invoked their *Miranda* rights, the court held the responses should be suppressed. The court held that because defendants' answers were the very act giving rise to the criminal charges defendants faced, the responses could not fit within the de minimis exceptions to *Miranda* that allow

---

* That statute reads, "A person who has previously been convicted of a violation of this section shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway and refuse a law enforcement officer's reasonable request under the circumstances for an evidentiary test where the officer had reasonable grounds to believe the person was in violation of [the criminal DUI statute]."

police officers to ask standard booking questions. The State was granted this interlocutory appeal, and we reverse.

The issue before us is narrow. The United States Supreme Court has previously determined that refusal evidence may be admitted in prosecution of DUI cases without running afoul of the Fifth Amendment or *Miranda*. *South Dakota v. Neville*, 459 U.S. 553 (1983). The case before us therefore presents only the question of whether this holding should extend to cover prosecution for the refusal itself. Although the district court appears to have based its decision on a violation of *Miranda* rights, defendants also claim that admission of refusal evidence violates the general Fifth Amendment protections against self-incrimination. As each of these grounds for suppression involve somewhat separate inquiries, and are questions of law, we will address both. See *In re Taft Corners Assocs., Inc.*, 160 Vt. 583, 593, 632 A.2d 649, 654-55 (1993) (in interest of judicial economy, Court may reach issues likely to recur on remand).

The Fifth Amendment privilege against self-incrimination is violated when a defendant is compelled to produce testimony against himself. See *Pennsylvania v. Muniz*, 496 U.S. 582, 588-89 (1990). In this case, the issue of whether defendants' actual refusal is testimony rather than physical evidence is heavily contested by the parties. The Supreme Court, in *Schmerber v. California*, 384 U.S. 757, 765 (1966), determined that blood alcohol concentration evidence was not testimonial, but rather physical, evidence, more akin to a fingerprint or a photograph than a communicated admission. The Court in *Neville* acknowledged, however, that "the distinction between real or physical evidence, on the one hand, and communications or testimony, on the other, is not readily drawn in many cases." *Neville*, 459 U.S. at 561. Indeed, 23 V.S.A. § 1201(b) punishes the refusal itself, whether it comes in the form of a verbal refusal, a head nod, or a sign indicating that the suspect refuses to take the test. Nevertheless, in the only federal circuit case to confront this issue, the Ninth Circuit concluded that the refusal was not testimonial because it "was not used for the testimonial or communicative content . . . [r]ather, it was used to show that [the defendant] had not performed the physical act . . . when requested." *Deering v. Brown*, 839 F.2d 539, 542 (9th Cir. 1988). We need not dwell on this issue, however, because we find that the refusal, whether or not it is testimony, was not compelled.

Where the refusal is not criminalized, the Supreme Court has held that no impermissible coercion is involved when a DUI suspect must decide whether to submit to a blood alcohol test. *Neville*, 459 U.S. at

564. In *Neville*, the defendant was arrested for DUI, read his *Miranda* rights, and then declined to take a blood alcohol test, stating " 'I'm too drunk, I won't pass the test.' " *Neville*, 459 U.S. at 555. The Supreme Court upheld a South Dakota statute that allowed the admission of that statement in the prosecution for DUI. *Id.* at 564. In *Neville*, the Court relied on its earlier decision in *Schmerber* that a state could compel a suspect to submit to the drawing of blood for a blood alcohol test without violating the Fifth Amendment. *Schmerber*, 384 U.S. at 765. *Schmerber* did limit its decision to contexts with similar facts. *Schmerber*, 384 U.S. 768-72 (holding that facts relevant to whether a state may constitutionally compel a suspect to provide a blood sample include whether the arresting officer had probable cause for the DUI arrest, whether there was sufficient time for the officer to obtain a search warrant, and whether the test was painful, violated suspect's religious beliefs, or medically dangerous). Based on *Schmerber*'s holding that in appropriate circumstances a state can legitimately compel a DUI suspect to submit to a test, the Court in *Neville* concludes that in such circumstances a state commits no harm by giving a DUI suspect the choice of submitting to the blood alcohol test or refusing to take the test. 459 U.S. at 563. The admission of the refusal into evidence is simply one of the "attendant penalties" for refusing to take the test. *Id.* The Court found that allowing a DUI suspect to choose whether or not to submit to a blood alcohol test does not violate the Fifth Amendment privilege against self-incrimination, for the police officer is not coercing the suspect to refuse the test. See *id.* at 564 (noting that in fact the police officer wants the suspect to take the blood test, "for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test.").

Here, Vermont is requiring a breath test, which is less intrusive then a blood test, and has increased the "attendant penalty" by creating a separate crime for refusing to submit to the test. That crime, however, is still based on the same rationale that justified the admission of the refusal in *Neville*. Like South Dakota in *Neville*, Vermont has enacted an implied consent law, 23 V.S.A. § 1202(a)(1), which states:

> Every person who operates, attempts to operate, or is in actual physical control of any vehicle on a highway in this state is deemed to have given consent to an evidentiary test of that person's breath for the purpose of determining the

person's alcohol concentration or the presence of other drug in the blood.

The consent statute spells out a bargain between drivers and the state. In exchange for the use of the roads within the state, drivers consent to have their breath tested if a police officer has reason to believe the driver is intoxicated. Having so bargained, drivers may not rely on the privilege against self-incrimination to prevent the state from compelling a DUI suspect to produce a breath sample without his or her consent. *Schmerber*, 384 U.S. at 765. Rather than enforce the implied consent statute by compelling a DUI suspect to produce a breath sample, however, the Legislature has chosen to penalize the refusal to produce a sample voluntarily. 23 V.S.A. § 1201(b).

Thus, if imposing a "penalty for refusing to take a blood-alcohol test is unquestionably legitimate," *Neville*, 459 U.S. at 560, it remains only to determine whether applying this penalty in the context of criminal refusal justifies abandoning *Neville*. In support of the trial court's decision, defendants argue that the nature of the choice they faced is fundamentally altered when the crime charged is the refusal itself, not DUI. They contend that having to choose between taking a breath test, which could expose them to criminal liability, or refusing the test, which also carries criminal consequences, presents them with the "cruel" dilemma that the Fifth Amendment is designed to prevent. See *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55 (1964). We disagree.

Because a DUI suspect is already deemed to have consented to the breath test, "no impermissible coercion is involved when the suspect refuses to submit to take the test." *Neville*, 459 U.S. at 562. The court in *Deering*, confronting a criminal refusal statute, found that criminalizing the refusal does not transform its admission as evidence into a violation of the Fifth Amendment. 839 F.2d at 542 (analogizing the refusal statute to a criminal contempt penalty for violating a court order to produce nontestimonial evidence). Here too we cannot identify a persuasive reason to treat a criminal refusal any differently from the admission of refusal evidence in *Neville*. Although defendants in this case were faced with an unpleasant choice — submit to the breath test and be prosecuted for DUI, or refuse to take the test and be prosecuted for criminal refusal — we find that the evidence of refusal no more violates the Fifth Amendment than would evidence of the breath test had defendants submitted to it. See *Neville*, 459 U.S. at 564 ("[C]riminal process often requires suspects ... to make difficult choices."). The evidence was not compelled because defendants had

already agreed, albeit impliedly, to provide it. Where "the state could have taken [defendant's] blood by force, it does not 'compel' a defendant to testify against himself when it allows him the choice of either producing the evidence or facing criminal charges — and even a mandatory prison sentence . . . for withholding it." *Deering*, 839 F.2d at 543. Thus, the State is entitled to use evidence of defendants' refusals in a prosecution for criminal refusal without violating the general Fifth Amendment privilege against self-incrimination.

The final issue is whether defendants' refusals were gathered in violation of the rights announced in *Miranda*. The Supreme Court has held that "[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*." *Neville*, 459 U.S. at 564 n.15. We hold that this conclusion is strengthened when the context shifts to prosecution for criminal refusal. Indeed, the protections and procedures of *Miranda* do not sensibly apply to this situation.

First, above all else *Miranda* was intended to protect defendants from abusive police practices used to obtain confessions. 384 U.S. at 445-58. Such concerns are not relevant here. In asking a defendant to submit to a breath test, a police officer has no incentive to use coercive procedures to convince the defendant to refuse. In fact, the state's interest lies in the defendant *submitting* to the breath test, not refusing it. See *Deering*, 839 F.2d at 543 (noting that criminalizing the refusal increases the compulsion to submit to the breath test, not the compulsion to refuse the test, which is the evidence that was allegedly compelled); *Neville*, 459 U.S. at 564 (observing that the police officer wants the suspect to take the blood test). Finding a *Miranda* violation in this case would do nothing to eliminate impermissible police conduct. In fact, the question asked by the police officers here (i.e. "Do you wish to take the breath test?") is a required procedure for a DUI stop. 23 V.S.A. § 1202. It would be anomalous, to say the least, to suppress evidence gathered by asking the statutorily required question.

Second, *Miranda* rights were designed to protect defendants from being coerced into confessing to past crimes. See *Miranda*, 384 U.S. at 467 (rights apply to a defendant subjected to in-custody interrogation designed to secure a confession). Here, the police officers asked defendants if they wished to perform a future act (the breath test). The police officers were not asking defendants to confess to a crime; rather their answers were the crime itself. Still, there was no inquiry, coercive

or otherwise, into defendants' prior actions (e.g. "Have you been drinking?") that *Miranda* warnings were intended to prevent.

In truth, despite the *Miranda* warnings, defendants in this case did not enjoy a right to remain silent, as far as responding to the request for a breath test, because a nonverbal refusal could still be grounds for prosecution. 23 V.S.A. § 1201(b) (a driver "shall not . . . refuse" a reasonable request for a breath test); see *Neville*, 459 U.S. at 565 ("[T]he *Miranda* warnings emphasize the dangers of choosing to speak . . . but give no warning of adverse consequences from choosing to remain silent."). Because of the inadequacies of the *Miranda* warnings in the context of a DUI stop, the police officer reads the suspect an additional set of warnings about the possibility that refusing to take the test will result in criminal prosecution for refusal. 23 V.S.A. § 1202(d) (outlining the required warnings). We conclude that *Miranda*'s protections do not apply to evidence. of refusal to submit to a breath test, and thus defendants' rights were not violated.

*Reversed.*