2011 VT 101

**STATE of Vermont v. Tina Marie LAMONDA**

[30 A.3d 687]

No. 10-209

¶ 1. September 8, 2011. Defendant entered a conditional guilty plea to one count of possession of a narcotic drug in violation of 18 V.S.A. § 4234(a)(1). She challenges the trial court's denial of her motion to suppress and dismiss. We affirm.

¶ 2. Defendant was charged with one count of possession of a narcotic drug and one count of possession of marijuana following a traffic stop. She moved to suppress the evidence against her, arguing that there were no exigent circumstances to justify the warrantless search of her purse. Following a hearing, the court denied the motion.

¶ 3. The court found as follows. Defendant was stopped in October 2009 after a state trooper observed her driving under the speed limit and the trooper determined that the license of the registered owner of the vehicle was under suspension. The trooper noticed that defendant seemed impaired, and defendant admitted to smoking marijuana earlier in the day. Believing there might be marijuana in defendant's vehicle, the trooper asked defendant if there was anything in the truck. Defendant replied that there might be a "roach."

¶ 4. The trooper asked permission to search the vehicle, and defendant understood that the request was to search for marijuana. Defendant said that she would rather not give permission. The trooper advised then that he had probable cause to search the vehicle, but he would need to apply for a warrant. At that point, defendant gave the trooper permission to search the vehicle.

¶ 5. The trooper saw defendant's purse in the front seat. It was open, and he could see a zipped-shut, opaque, purple bag inside, which he believed was a "pipe" bag. He asked defendant if she had a pipe in it, and she said no. The trooper opened the bag and found no pipe. The trooper continued searching defendant's purse. He found marijuana inside a closed tin within the purse. The trooper also found three or four other closed bags in defend-

ant's purse that contained prescription medicine. Defendant did not give the trooper specific permission to search her purse or the containers therein, nor did the trooper make such a request.

¶ 6. As noted above, defendant argued suppression was required because she did not give the trooper permission to search her purse and there were no exigent circumstances justifying the warrantless search. The State argued that defendant's consent to search the truck extended to her purse, which was in the passenger compartment. Both parties relied on *State v. Savva*, 159 Vt. 75, 616 A.2d 774 (1991), which the court found inapposite. In *Savva*, this Court considered whether the search of an automobile was justified under the "exigent circumstances" exception to the warrant rule under the Vermont Constitution, and held that the mobility of a motor vehicle was not a per se exigent circumstance. *Id.* at 91, 616 A.2d at 783. The defendant in *Savva* had not consented to the search of his car, so the trial court thus found *Savva* to offer little guidance.

¶ 7. Instead, the court relied on *Florida v. Jimeno*, 500 U.S. 248 (1991), a case with analogous facts. In *Jimeno*, the United States Supreme Court held that the search of a closed container in a vehicle did not violate the Fourth Amendment to the United States Constitution where the defendant consented to a general search of his vehicle. As in this case, a police officer stopped the defendant in *Jimeno* for a traffic violation. The officer had reason to believe that the defendant was involved in drug trafficking, a fact that the officer relayed to the defendant before asking his permission to search the vehicle. The defendant declared that he had nothing to hide, and consented to a search without voicing any limitations. The officer found drugs in a folded, brown paper bag on the floorboard of the car.

¶ 8. On appeal, the defendant argued that his consent to search the car did not extend to the closed paper bag inside the car. The Supreme Court concluded otherwise. "The scope of a search is generally defined by its expressed object," the Court explained. *Id.* at 251. Here, the officer informed the defendant that he would be looking for narcotics in the car, and the defendant granted the officer permission to search his car without limitation. The Court found it objectively reasonable for the police to conclude that where the object of the search was drugs, the defendant's "general consent to search [his] car included consent to search containers within that car which might bear drugs." *Id.* Certainly, "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container," and that such contraband is rarely "strewn across the truck or floor of a car." *Id.* (citation omitted). In reaching its conclusion, the Court rejected the argument that the police were required to separately request permission to search each closed container within the car. It found no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. Although a suspect is free to limit the scope of a consented-to search, the Court explained, in cases where "his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252.

¶ 9. Based on *Jimeno*, and other related cases, the trial court denied defendant's motion to suppress. It explained that, as in *Jimeno*, defendant granted a general request to search her vehicle. She understood that the purpose of the search was to look for illegal drugs, specifically marijuana. The search of defendant's purse, including the tin container and the pouches located therein, was reasonable under the circumstances — these were all places that a person might be reasonably expected to keep illegal drugs. To hold

otherwise, the court reasoned, would put the police in the difficult position of having to seek separate permission to search almost everywhere in the vehicle where drugs could be found. In reaching its conclusion, the court recognized that this Court has found that Article 11 of the Vermont Constitution provides greater protections for personal liberty than does the Fourth Amendment to the United States Constitution. The court was satisfied, however, that its approach — narrowly construing a defendant's consent to search — properly struck a balance between liberty for the individual and crime detection. The court thus denied defendant's motion to suppress and dismiss. Defendant entered into a plea agreement, reserving her right to challenge the court's ruling. This appeal followed.

¶ 10. On review of the trial court's resolution of a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous, and we review de novo the question of whether the facts as found meet the relevant legal standard. *State v. Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. Defendant does not challenge any of the court's factual findings, and she concedes on appeal that the trial court "may have been correct" in determining that the search was lawful under the Fourth Amendment. Defendant argues instead that the trooper's actions were unlawful under Chapter I, Article 11, of the Vermont Constitution. Defendant focuses on cases involving warrantless searches and asserts that there were no exigent circumstances to justify the search here. She maintains that she had an expectation of privacy in the contents of her purse and the trooper was obligated to obtain a warrant before searching it.

¶ 11. This argument is unpersuasive. As the trial court found, this case does not involve the exigent circumstances exception to the warrant requirement, and the cases cited by defendant are inapposite.

Article 11, like the Fourth Amendment, "prohibits only 'unreasonable' searches and seizures." *Savva*, 159 Vt. at 88, 616 A.2d at 781; see also *Jimeno*, 500 U.S. at 250 (recognizing that Fourth Amendment proscribes only those state-initiated searches and seizures that are unreasonable). Defendant consented to the search here, and courts "have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Jimeno*, 500 U.S. at 250-51. Given defendant's consent, the State was not required to show exigent circumstances or to obtain a warrant. See, e.g., *State v. Neese*, 691 S.E.2d 883, 885 (Ga. Ct. App. 2010) ("A valid consent to search eliminates the need for either probable cause or a search warrant."); *State v. Sargent*, 2009 ME 125, ¶ 10, 984 A.2d 831 ("Exceptions to the warrant requirement, including those based on consent, are construed narrowly, and the requirement of a warrant is waived only to the extent granted by the defendant in his consent." (quotations and alteration omitted)).

¶ 12. We need not go beyond defendant's "exigent circumstances" argument because no other Article 11 challenge was presented and preserved. See *State v. Brillon*, 2010 VT 25, ¶ 6, 187 Vt. 444, 995 A.2d 557 ("Merely citing the Vermont Constitution, without providing any analysis of how the state constitutional provision compares with its federal analog, does not adequately present the issue for our review, especially where the argument was not presented in the trial court."). Defendant did not argue below that Article 11 calls for more particularized consent than that required under the Fourth Amendment or that Article 11 requires some different analysis of consent. She did not provide any "substantive analysis of the Vermont Constitution" or "set forth any rationale as to how our analysis of this constitutional claim should differ under the Vermont Consti-

tution in comparison with the federal constitution." *Id.* (quotation omitted). Defendant therefore waived any further review under Article 11 and, so far as contested, we find no error in the trial court's ruling.

*Affirmed.*

¶ 13. **Johnson, J.,** dissenting. While I agree that defendant's briefing below was barely adequate, the fact remains that the trial court here understood defendant to be arguing for a more protective scope-of-consent standard under Article 11 than under the Fourth Amendment. Indeed, the trial court not only acknowledged the argument but rejected it on policy grounds, concluding that it would place police officers in the "very difficult position of having to seek separate permission" to search containers within vehicles if more than a general consent were required. Contrary to the majority, therefore, I would find that the scope-of-consent issue was adequately preserved for appellate review. Furthermore, as explained below, I would hold that this Court's Article 11 jurisprudence compels adoption of the more stringent standard advocated by defendant.

¶ 14. The facts are plain. Although initially reluctant, defendant ultimately consented to a search of her vehicle but did not, as the majority concedes, "give the trooper specific permission to search her purse or the containers therein, nor did the trooper make such a request." *Ante,* ¶ 5. The trial court nevertheless upheld the search under the Fourth Amendment scope-of-consent standard articulated by the United States Supreme Court in *Florida v. Jimeno,* 500 U.S. 248 (1991), and further found that greater protection was not required under Article 11 of the Vermont Constitution because the federal standard strikes the proper balance between the interest in "individual privacy . . . and the convenience of crime detection."

¶ 15. Under *Jimeno,* the question "is whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine" containers within the car, and in resolving this question the Court instructed that "[t]he scope of a search is generally defined by its expressed object." *Id.* at 251. The high court thus reasoned that, since the officer there had informed the defendant that he was suspected of carrying narcotics, "it was objectively reasonable for the police to conclude that the general consent to search [the] car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Id.*

¶ 16. Even a cursory analysis of the Court's reasoning suggests that it raises far more questions than it answers. How does one determine, for example, what a "reasonable person would be expected to know" with respect to hiding drugs? Drugs are often depicted in popular culture as being smuggled inside car wheels, gas tanks, rocker panels, and other areas deep within a motor vehicle. Does this suggest that a general consent to search authorizes the police to literally tear a car apart looking for drugs? Alternatively, if the officer fails to mention drugs, does that limit the scope of the search? Would the scope differ if the officer mentioned some other contraband such as stolen jewels or counterfeit money, and how precisely?

¶ 17. Apart from these uncertainties, the *Jimeno* Court failed to explain why the "reasonableness" of a search should be measured from the officer's perspective rather than the suspect's, i.e., what would a reasonable person in the suspect's circumstances have intended to convey when he or she gave a general consent to the search of his or her car? As Justice Marshall, dissenting in *Jimeno,*

observed, in most cases a suspect's general consent to the search of his or her car will be "ambiguous with respect to containers found inside the car." *Id.* at 254. Thus, like all warrantless-search exceptions, it would seem more fair to place the burden on the police to clarify that the suspect consented to a search of containers rather than on the suspect to show that he or she intended to withhold consent. As Justice Marshall explained, this can easily be accomplished simply by requiring "that a police officer who wishes to search a suspicious container found during a consensual automobile search obtain additional consent to search the container. If the driver intended to authorize search of the container he will say so; if not, then he will say no." *Id.* This bright-line approach has the added advantage of avoiding questionable inferences based on what sort of contraband the officer might have mentioned in passing or what the officer could reasonably assume the suspect understood about likely hiding places.

¶ 18. The only countervailing argument to this alternative approach is that, as the trial court here noted, it would make it more "difficult" for officers to seek a separate permission to search containers within the vehicle. I find it difficult, however, to understand how the inconvenience of asking a citizen for consent to search a container outweighs the interest in assuring that the consent was real and not the result of confusion as to the meaning of a general consent. See *State v. Savva*, 159 Vt. 75, 86, 616 A.2d 774, 780 (1991) (noting that constitutional principle cannot "be sacrificed for the sake of law enforcement convenience"). It is simply a matter, as Justice Marshall explained, of giving an individual who genuinely "did not mean to authorize such additional searching . . . [the] opportunity to say no." *Jimeno*, 500 U.S. at 256.

¶ 19. We in Vermont have long recognized "a separate and higher expectation of privacy for containers used to transport personal possessions than for objects exposed to plain view within an automobile's interior." *Savva*, 159 Vt. at 88, 616 A.2d at 781. In light of that heightened expectation, it is unreasonable to construe an individual's general consent to the search of his or her vehicle as extending to containers within the vehicle. We need not, and should not, follow the United States Supreme Court in finding a fictitious consent by citizens who could not anticipate that their cooperation with law enforcement would result in open season on their purses, backpacks, wallets, and other personal containers. Accordingly, I would grant defendant's motion to suppress under Article 11.

¶ 20. I am authorized to state that Justice Skoglund joins in this dissent.