NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 91

Nos. 2019-022 & 2019-023

| | |
|---|---|
| State of Vermont | Supreme Court |
| v. | On Appeal from<br>Superior Court, Franklin Unit, |
| Peter John Williams | Criminal Division |
| State of Vermont | March Term, 2020 |
| v. | |
| Peter J. Boissoneault | |

A. Gregory Rainville, J.

Heather J. Gray, Department of State's Attorneys and Sheriffs, Montpelier, for
  Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier,
  for Defendants-Appellants.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **EATON, J.** Defendants Peter Williams and Peter Boissoneault bring this consolidated appeal from the criminal court's denial of motions to exclude evidence filed in their respective driving under the influence, third offense (DUI-3) prosecutions. They argue that the court erred in declining to suppress their evidentiary breath test results as gathered pursuant to a warrantless search in violation of Chapter I, Article 11 of the Vermont Constitution. We conclude the court correctly determined that these tests satisfied the consent exception to Article 11's warrant requirement, and therefore affirm.

¶ 2.    The trial court found the following facts based on the record and evidence presented in both cases.  In December 2017, Williams was involved in a motor-vehicle accident.  An investigating officer arrested him for DUI and brought him to the Swanton Police Department for processing.  There, police requested that Williams take an evidentiary breath test to determine his blood-alcohol concentration (BAC).  In connection with this request, an officer recited standard language from the DUI Affidavit-Infrared form.  That language included the following warnings regarding the potential ramifications of a refusal to take the test: Williams' refusal could be offered into evidence against him at trial; if a court found the request he refused was reasonable, his license would be suspended for at least six months; if he had prior DUI convictions or was involved in an accident resulting in the serious injury or death of another and refused the test, he could be charged with criminal refusal; and if he had been involved with an accident causing such harm to another, the court could issue a search warrant and order him to submit to a blood test.  After the officer relayed this information, Williams declined the proffered opportunity to speak to an attorney and agreed to provide a sample of his breath.

¶ 3.    In March 2018, Boissoneault was likewise arrested for driving under the influence. He was taken to the Franklin County Sheriff's Department for processing, where a deputy requested an evidentiary sample of his breath.  The deputy then read Boissoneault most of the same refusal warnings from the DUI Affidavit-Infrared form that Williams heard several months earlier.[1]  Unlike Williams, Boissoneault exercised his statutory right to consult with an attorney; following this conversation, he, too, agreed to take the breath test.

---

[1]  The trial court found that only Williams was informed that if he had been involved in an accident resulting in the serious injury or death of another, a court could issue a search warrant ordering him to submit to a blood test, noting that this warning was designated "FATAL/SERIOUS INJURY ONLY."  The circumstances of the defendants' arrests were different, and neither contends that he did not receive the warnings required in connection with a breath test request under the implied-consent statute.  23 V.S.A. § 1202(d).

¶ 4.     Several important factual findings were common to both cases. Williams and Boissoneault were adults with prior experience encountering law enforcement. The trial court's review of body-camera footage in each case supported the conclusion that both defendants "appear[ed] intelligent and understanding of what [was] occurring during their processing." Throughout both encounters, officers spoke calmly and respectfully; indeed, the record was devoid of any suggestion that they coerced defendants to take the tests through intimidation, unduly aggressive language, or physical force. And neither defendant disputes that his arrest was supported by probable cause to believe that he had been driving under the influence.

¶ 5.     Following these encounters, Williams was charged with DUI-3 and careless or negligent operation of a vehicle, and Boissoneault was charged with DUI-3 and operating a vehicle under license suspension. Each filed a motion to exclude the results of the evidentiary breath test in his case, arguing that the information provided to him in connection with the request to submit to the test coerced his consent to participate, rendering it involuntary under Article 11 of the Vermont Constitution. They maintained that because no other exception to Article 11's warrant requirement applied, the warrantless searches were unconstitutional and their results must be suppressed.

¶ 6.     The trial court found that two exceptions to the Vermont Constitution's warrant requirement applied to the tests, and denied defendants' motions on this basis. It concluded that each defendant voluntarily consented verbally and in writing to the evidentiary breath tests, satisfying the consent exception, and that a warrantless breath test is a constitutionally valid search incident to lawful arrest for DUI. Subsequently, defendants both entered conditional guilty pleas to their DUI-3 charges, preserving the right to appeal the court's denial of their motions to exclude; in exchange, the State dismissed Williams' negligent-operation charge and Boissoneault's driving-under-license-suspension charge. Defendants appealed.

¶ 7.   Williams and Boissoneault argue that the trial court erred in denying their motions to exclude breath-test results under Article 11 because neither of the warrant-requirement exceptions it identified applied.[2]   We conclude that the tests satisfied the consent exception to the warrant requirement, and therefore do not address the trial court's alternate conclusion that they were also permissible under Article 11 because they were incident to defendants' arrests for DUI. See In re M.C., 2018 VT 139, ¶ 9, 209 Vt. 219, 204 A.3d 1123 (observing that this Court will "not decide constitutional questions unnecessarily" (quotation omitted)).

¶ 8.   An evidentiary breath test is a search triggering the protections of Article 11 of the Vermont Constitution. State v. Edelman, 2018 VT 100, ¶ 6, 208 Vt. 372, 198 A.3d 556.  Therefore, it is permissible only where a warrant is granted based on a judicial finding of probable cause, or "pursuant to a few narrowly drawn and well-delineated exceptions . . . . allowed only in those extraordinary circumstances which make the warrant and probable-cause requirement impracticable."  State v. Bauder, 2007 VT 16, ¶ 14, 181 Vt. 392, 924 A.2d 38 (quotation and citations omitted); see also State v. Welch, 160 Vt. 70, 78-79, 624 A.2d 1105, 1110 (1992) (recognizing that "Article 11 does not contemplate an absolute prohibition on warrantless searches").  However, " 'probable cause and a search warrant are not required when consent to search is voluntarily given by one authorized to do so.' "  Edelman, 2018 VT 100, ¶ 6 (alteration omitted) (quoting State v. Zaccaro, 154 Vt. 83, 87, 574 A.2d 1256, 1259 (1990)).

¶ 9.   The crux of defendants' argument is that any consent to provide an evidentiary breath sample granted in the wake of the standard DUI Affidavit-Infrared warnings—which the implied-consent law mandates, see 23 V.S.A. § 1202(d)—is not voluntarily given as required

---

[2]  Because warrantless breath tests do not violate the United States Constitution under the search-incident-to-lawful-arrest exception to the Fourth Amendment's warrant requirement, the question presented in this case is solely whether such warrantless breath tests offend Article 11 of the Vermont Constitution.  See Birchfield v. North Dakota, __ U.S. __, 136 S. Ct. 2160, 2174-85 (2016).

under Article 11 because those warnings describe civil and criminal refusal penalties which burden the constitutional right to refuse a warrantless evidentiary breath test.[3] But although defendants challenge the trial court's determination as to the voluntariness of their respective consents to search, they do not contest the factual findings on which that conclusion was predicated. See State v. Weisler, 2011 VT 96, ¶¶ 26, 34, 190 Vt. 344, 35 A.3d 970 (concluding that underlying historical facts are reviewed for clear error, but "the voluntariness of a consent to search, and thus the ultimate constitutional validity of the search, must be reviewed independently by this Court on appeal"). Therefore, we review the trial court's ruling on the constitutional validity of the searches at issue de novo. Id.

¶ 10. We recently explained that a defendant's submission to a law enforcement officer's warrantless request for a breath test—where that request is made, like those challenged here, in accordance with the implied-consent law's requirements—satisfies the consent exception to Article 11's warrant requirement for two reasons. Edelman, 2018 VT 100, ¶ 7. First, because the reasonableness requirement of the statute calls for a level of suspicion commensurate to a finding of probable cause, 23 V.S.A. §§ 1201(a), 1202(a)(3), the officer's request is necessarily grounded in "the same quantum of support" required to issue a search warrant to obtain the sample. Edelman, 2018 VT 100, ¶ 7 (citing Shaw v. Vt. Dist. Ct., Unit No. 3, Franklin Cir., 152 Vt. 1, 5, 563 A.2d 636, 639 (1989)); see also State v. Perley, 2015 VT 102, ¶ 18, 200 Vt. 84, 129 A.3d 93 (recognizing with respect to implied-consent statute "that the term 'reasonable grounds' is akin to probable cause"). Second, and more importantly, the implied-consent statute does not require drivers to submit to the evidentiary breath test. Edelman, 2018 VT 100, ¶ 8 ("While § 1202 sets out civil and criminal penalties for the refusal to take an evidentiary breath test under some circumstances, the choice whether to take the test remains with the defendant.").

---

[3] For purposes of this opinion, we assume that a driver retains a constitutional right to refuse an evidentiary breath test after it is lawfully requested.

¶ 11. On this basis, we held that absent a defendant's particularized allegation that the factual circumstances of a given case rendered his consent coerced, or granted only in submission to a claim of lawful authority, the State need not prove voluntariness as a threshold matter in order for the breath test result to be admitted. Id. ¶ 10. But where a defendant asserts that he did not voluntarily consent to an officer's request for an evidentiary breath test based upon the particular circumstances of the underlying law-enforcement encounter, the State must show that defendant voluntarily submitted to the breath test in order to introduce the result at trial. Id. ¶¶ 9-10. Defendants raised such a challenge here.[4]

¶ 12. Voluntariness is determined from the totality of the circumstances, and "depends heavily on the facts of each individual case." Id. ¶ 10 (quoting State v. Ford, 2007 VT 107, ¶ 12, 182 Vt. 421, 940 A.2d 687). Our inquiry focuses "on whether a reasonable person in [defendants'] circumstances would have retained the freedom of will to withhold consent" to the test, but the State need not show a knowing and intelligent waiver of the right. State v. Betts, 2013 VT 53, ¶ 14, 194 Vt. 212, 75 A.2d 629 (quotation omitted); see also State v. Pitts, 2009 VT 51, ¶ 24, 186 Vt. 71, 978 A.2d 14.

¶ 13. Defendants do not challenge the court's findings as to the circumstances surrounding both requests. Rather, the basis of defendants' challenge is that the court failed to recognize that the implied-consent form advising defendants of the potential consequences of test refusal rendered their consent involuntary. To be sure, the government cannot discharge its burden to prove voluntary consent "by showing no more than acquiescence to a claim of lawful authority."

---

[4] Edelman strongly suggested that a law-enforcement encounter which, like those at issue here, proceeds as contemplated by the implied-consent statute and does not involve any allegation of coercion, threat, or force, would be an inadequate basis for a particularized voluntariness challenge. Edelman, 2018 VT 100, ¶ 8. However, the defendant in Edelman was not faced with a second or subsequent DUI, and had not been involved in an accident resulting in the serious injury or death of another person. He therefore was not confronted with the most severe refusal penalties facing defendants here. To the extent Edelman thus left the effect of these penalties an unanswered question, we address it now.

Betts, 2014 VT 53, ¶ 17 (quoting Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968)). But an officer's accurate description of "what will occur in the event of a refusal" to grant consent to a search does not necessarily defeat voluntary consent so long as the officer does not overstate his authority. See Pitts, 2009 VT 51, ¶¶ 30-31. Here, defendants do not dispute that the information they received about what might occur as a result of test refusal was entirely consistent with those penalties authorized under the implied-consent statute. Nor do they challenge the trial court's finding that both encounters were free of any intimidation, unduly aggressive language, or physical force on the part of law enforcement. The question on appeal is whether the consequences for refusal imposed by the implied-consent statute themselves burden the exercise of the Article 11 right to be free of unreasonable government intrusions into legitimate expectations of privacy. See State v. Bryant, 2008 VT 39, ¶ 10, 183 Vt. 355, 950 A.2d 467. Thus, we must determine whether the defendants' decisions to waive those rights were rendered involuntary by virtue of the consequences attending the opposite choice.

¶ 14. In analyzing claims that the government has imposed a choice burdening search-and-seizure rights secured by the Fourth Amendment, courts apply the unconstitutional-conditions doctrine. Lebron v. Sec'y, Fl. Dep't of Children & Families, 710 F.3d 1202, 1217-18 (11th Cir. 2013) (holding that a state "cannot mandate 'consent' to drug testing, which essentially requires [applicant for benefits] to choose between exercising his Fourth Amendment right against unreasonable searches at the expense of life-sustaining financial assistance for his family or, on the other hand, abandoning his right against unreasonable government searches in order to access desperately needed financial assistance, without unconstitutionally burdening [his] Fourth Amendment right"); see also State v. Rajda, 2018 VT 72, ¶¶ 32-39, 208 Vt. 324, 196 A.3d 1108 (applying unconstitutional-conditions doctrine to determine that Fourth Amendment does not bar evidence of defendant's refusal to submit to warrantless blood draw in subsequent DUI prosecution). Because defendants do not argue that a different or more particularized analysis is

7

required to determine whether an Article 11 right has been burdened, we address this issue under the federal unconstitutional-conditions doctrine. See State v. Lamonda, 2011 VT 101, ¶ 12, 190 Vt. 618, 30 A.3d 687 (analyzing voluntary-consent challenge under Fourth Amendment where defendant "did not argue below that Article 11 calls for more particularized consent than that required under the Fourth Amendment or that Article 11 requires some different analysis of consent").

¶ 15.    The unconstitutional-conditions doctrine is grounded in the premise that "the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.' " Jenkins v. Anderson, 447 U.S. 231, 236 (1980) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 30 (1973)). Yet "[w]hat the state may not do directly it may not do indirectly." Bailey v. Alabama, 219 U.S. 219, 244 (1911); see also Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 612 (2013) ("A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing."). Thus, the doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." Koontz, 570 U.S. at 604. The "threshold question" in this case-by-case inquiry "is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." Chaffin, 412 U.S. at 32. To answer this question, it "is appropriate to consider the legitimacy of the challenged governmental practice." Jenkins, 447 U.S. at 238. "Practices that enhance the reliability of the criminal process and its truth-seeking function may be permitted, even if a constitutional right is burdened." Rajda, 2018 VT 72, ¶ 33.

¶ 16.    The policies undergirding Article 11's warrant requirement are well-established. Freedom from unreasonable government intrusions into legitimate expectations of privacy is "a core value protected by Article 11," and the warrant requirement guards against such intrusions by requiring that, absent exceptional circumstances, neutral magistrates—and not officers of the

8

executive branch—determine whether an intrusion is permissible. State v. Savva, 159 Vt. 75, 85-88, 616 A.2d 774, 779-81 (1991). This principle is founded on the belief that a magistrate's intercession may spare the public from "ill-considered searches," confine the scope of the search within its lawful bounds, and offer "an impartial objective assessment before a search is carried out." Id. at 86, 616 A.2d at 780. Applying the federal unconstitutional-conditions doctrine, we conclude that the election compelled by the implied-consent statute does not impair these essential policies to any appreciable extent.

¶ 17. Fundamental to our analysis here is our recognition that, by exercising the privilege to drive on Vermont roads under circumstances which gave rise to probable cause to believe that they were intoxicated, defendants voluntarily accepted the imposition of the choice between consenting to a warrantless breath test and incurring certain legal consequences for refusal. Indeed, we have long acknowledged that the implied-consent statute "spells out a bargain between drivers and the state" whereby, "[i]n exchange for the use of the roads within the state, drivers consent to have their breath tested if a police officer has reason to believe the driver is intoxicated." State v. Morale, 174 Vt. 213, 217, 811 A.2d 185, 188 (2002); see also State v. Bonvie, 2007 VT 82, ¶ 8, 182 Vt. 216, 936 A.2d 1291 (recognizing implied-consent statue "encourage[s]" drivers to submit to "breath tests through its conditioning of motor-vehicle licenses on an operator's implied consent to take such tests"); State v. Carmody, 140 Vt. 631, 636, 442 A.2d 1292, 1295 (1982) (observing that implied-consent law's provision of consultation with counsel and time for reflection "specifically demonstrated [the Legislature's] concern that any refusal to be tested not be lightly decided"). And we have repeatedly upheld the statute against challenges to its legitimacy. See, e.g., Morale, 174 Vt. at 217, 811 A.2d at 188 (finding criminal prosecution for test refusal, like admission of refusal evidence in DUI prosecution, "unquestionably legitimate" statutory penalty (quotation omitted)); Veilleux v. Springer, 131 Vt. 33, 39-40, 200 A.2d 620, 624-25 (1973) (observing implied-consent statutes like Vermont's have "been long recognized" by U.S. Supreme

9

Court as "constitutionally valid method of detecting alcoholic content in the body fluids of an operator of a vehicle in order to combat the threat of the drunken driver to the public"); see also Jenkins, 447 U.S. at 238 (noting that "legitimacy of the challenged governmental practice" is appropriate component of unconstitutional-conditions analysis). In short, both the consequences of refusal and the mandatory warnings regarding these consequences legitimately enhance the truth-seeking function and the reliability of the criminal process by incentivizing testing. See Rajda, 2018 VT 72, ¶ 33.

¶ 18. We do not find that the compelled election between providing a breath sample or facing the statutory consequences of refusal appreciably impairs the policies Article 11 implements. See McGautha v. California, 402 U.S. 183, 213 (1971) ("The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved."). As we have explained with respect to blood tests, "in the context of a DUI criminal prosecution pursuant to an implied consent law . . . the scope of the requested search is a targeted one following arrest based on suspicion of impaired driving." Rajda, 2018 VT 72, ¶ 39. And a breath test is far more targeted than a blood test in that it is "capabable of revealing only one bit of information, the amount of alcohol in the subject's breath." Birchfield v. North Dakota, __ U.S. __, 136 S. Ct. 2160, 2177 (2016). As a result, a magistrate can do nothing to narrow the scope of the requested search, which is constrained by its very nature to produce only evidence of alcohol impairment. Further, where an officer has valid probable cause to believe that a driver is under the influence of alcohol, he necessarily also has probable cause to believe that evidence of the crime of DUI may be found in an evidentiary sample of the driver's breath. Cf. State v. Bauder, 2007 VT 16, ¶ 25, 181 Vt. 392, 924 A.2d 38 (rejecting "assumption that an arrest automatically provides probable cause for a search" under Article 11, in part because "[a] driver arrested for DUI may have been drinking at home, at a friend's, in a restaurant or bar, or at a sporting event, but not necessarily in his or her car"). Finally, as the U.S. Supreme Court has recognized, "a magistrate

10

is in a poor position to challenge an officer's characterization of the indicia of impairment that are largely the same from one drunk driving stop to another." Rajda, 2018 VT 72, ¶ 28 (citing Birchfield, 136 S. Ct. at 2181). In this context, a magistrate's intervention can do nothing to confine the scope of the requested search, and can do little to provide an impartial and objective assement of the circumstances. See Savva, 159 Vt. at 86, 616 A.2d at 780.

¶ 19. Thus, an officer's request for an evidentiary breath test presents that unique circumstance in which the values animating Article 11 are not furthered by a warrant application. Indeed, because a driver cannot be lawfully compelled to produce a breath sample, with or without a warrant, see State v. Schapp, 2019 VT 27, ¶ 13, 210 Vt. 180, 212 A.3d 1226, it is difficult to imagine how requiring an officer to obtain one would meaningfully impact a defendant who refuses an officer's reasonable request—with the exception of the likely extension of the time period during which he is detained for processing.

¶ 20. On the basis of these considerations, we conclude that defendants were presented with an unpalatable choice, but not an unconstitutional one.

> The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.

Rajda, 2018 VT 72, ¶ 32 (quoting McGautha, 402 U.S. at 213). Defendants voluntarily submitted to the lawfully requested tests. Thus, as we recognized in Edelman, Article 11 did not require a warrant. Defendants' motions to exclude were properly denied.

Affirmed.

FOR THE COURT:

_____
Associate Justice

11